UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAREN PALMA and HALLIE SELGERT,

       Plaintiffs,

v.                            Case No.  8:13-cv-698-T-33MAP

METROPCS WIRELESS, INC.,

       Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to Plaintiffs Karen Palma and Hallie Selgert's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members (Doc. # 33), which was filed on May 14, 2013. Defendant MetroPCS Wireless, Inc. filed a Response in Opposition to the Motion (Doc. # 44) on June 11, 2013, to which Plaintiffs filed a Reply (Doc. # 73) on July 12, 2013. Also before the Court is MetroPCS's Motion to Strike Declarations Submitted in Support of Plaintiffs' Motion for Conditional Certification (Doc. # 43).  Plaintiffs filed a Response in Opposition to the Motion to Strike (Doc. # 64) on June 28, 2013, MetroPCS filed a Reply (Doc. # 72) on July 11, 2013, and Plaintiffs filed a Sur-Reply (Doc. # 81) on July 19, 2013.

The Court declines to strike Plaintiffs' declarations, with the exception of one submitted declaration, and after

finding that Plaintiffs have demonstrated that similarly situated employees seek to join the action, the Court grants the Motion for Conditional Certification in this Fair Labor Standards Act case.

## I.    **Background**

Plaintiffs Palma and Selgert are currently employed by Defendant MetroPCS as Account Service Representatives in Tampa, Florida.  (Doc. # 31 at ¶¶ 9-10).  Plaintiffs assert that they routinely worked overtime hours; however, because MetroPCS classified all Account Service Representatives as exempt employees, they were paid a salary plus commissions instead of overtime premiums. (<u>Id.</u> at ¶¶ 60-64).  Plaintiffs assert that their alleged misclassification as exempt employees constitutes a violation of the FLSA, 29 U.S.C. § 201, et seq.  (<u>Id.</u> at ¶¶ 57-61).  Accordingly, Plaintiffs filed an action for unpaid wages, liquidated damages, and declaratory relief pursuant to the FLSA against MetroPCS on March 18, 2013 (Doc. # 1), and thereafter filed an Amended Complaint (Doc. # 31) on May 14, 2013.

At this juncture, Plaintiffs seek conditional certification of this case as a nationwide collective action pursuant to 29 U.S.C. § 216(b), consisting of all Account Service Representatives employed by MetroPCS within the last

2

three years who were paid salary plus commissions and who earned less than $100,000 per year for any period of their employment within the statute of limitations, and who were not paid overtime compensation for hours worked over forty in a workweek. (Doc. # 33 at 1).

## II.  __Legal Standard__

The Fair Labor Standards Act expressly permits collective actions against employers accused of violating the FLSA's mandatory overtime provisions. _See_ 29 U.S.C. § 216(b) ("[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.").  In prospective collective actions brought pursuant to § 216(b), potential plaintiffs must affirmatively opt into the collective action. _Id._  ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

The Eleventh Circuit has recommended a two-tiered procedure for district courts to follow in determining whether to certify a collective action under § 216(b). _Cameron-Grant v. Maxim Healthcare Servs., Inc._, 347 F.3d 1240, 1243 (11th Cir. 2003)(citing _Hipp v. Liberty Nat'l Life Ins. Co._, 252

F.3d 1208, 1218 (11th Cir. 2001)).   The first tier, known as the notice stage, is relevant here.  "At the notice stage, the district court makes a decision--usually based on the pleadings and any affidavits which have been submitted-- whether notice of the action should be given to potential class members." Cameron-Grant, 347 F.3d at 1243.

The Court must determine whether there are other employees who desire to opt-in and whether those employees are similarly situated.  Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258 (11th Cir. 2008); Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991). This determination is made using a "fairly lenient standard." Hipp, 252 F.3d at 1218.  Factors considered in determining whether the potential plaintiffs are similarly situated to the named plaintiffs include (1) job duties and pay provisions and (2) whether they were subject to a common policy, plan, or scheme that forms the basis of the alleged FLSA violation. Dybach, 942 F.2d at 1567-68; Vondriska v. Premier Mort. Funding, Inc., 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007). The plaintiffs bear the burden of showing a reasonable basis for the claim that there are other similarly situated employees who desire to join in the litigation. Id.

The second stage of the certification process is

4

"typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." <u>Hipp</u>, 252 F.3d at 1218.  During the second stage of the certification process, the standard to show substantial similarity is more stringent. <u>Morgan</u>, 551 F.3d at 1261.  If it is determined at the second stage that the representative plaintiffs and the opt-in plaintiffs are not similarly situated, the district court "decertifies" the collective action. <u>Id.</u>  Notably, the Court does not make credibility determinations or resolve contradictory evidence presented by the parties during the notice stage.  <u>See</u>, <u>e.g.</u>, <u>Henderson v. Holiday CVS, LLC</u>, No. 09-cv-80909, 2010 U.S. Dist. LEXIS 53604, at *10 (S.D. Fla. May 11, 2010)(declining to "indulge in a fact finding determination on the merits, which is improper" at the notice stage of the litigation).

III. <u>**Conditional Certification Analysis**</u>

    A.   <u>**Do Others Seek to Join in the Action?**</u>

As noted, Plaintiffs bear the onus of demonstrating that there are other employees who desire to opt into the litigation and that these other employees are similarly situated with respect to their job requirements and pay arrangements. <u>Dybach</u>, 942 F.2d at 1567-68.  Plaintiffs have

5

satisfied this requirement.   The following Account Service Representatives, in addition to Palma and Selgert, have filed opt-in notices: Linda Prevalon (Doc. # 7); Hector Casta (Doc. # 8); Lisa Hobday (Doc. # 9); Eduardo Villar (Doc. # 10); Christopher Smith (Doc. # 16); Aixa Reynolds (Doc. # 20); Gerald Jusino (Doc. # 59); Yvonne Pacheo (Doc. # 69); and Ann Bush (Doc. # 116).

Although there is no magic number requirement for the notice stage, the presence of nine opt-in notices satisfies the Court that other Account Service Representatives desire to join in the action.[1] See, e.g., Bradford v. CVS Pharmacy, Inc., No. 1:12-cv-1159, 2013 WL 425060, at *5 (N.D. Ga. Feb. 4, 2013)(nine consents filed by similarly situated employees was sufficient for nationwide certification); Reyes v. AT&T Corp., 801 F. Supp. 2d 1350, 1357 (S.D. Fla. 2011)(affidavits of named plaintiffs plus eight similarly situated employees was sufficient for conditional certification of a nationwide

---

[1]   The   Court   denies   Plaintiffs'   "Motion   for Clarification," in which Plaintiffs ask the Court: "Can the Court Please Clarify What it Deems to Be a Sufficient Number of Declarations to Establish the 'Desire to Join' Prong for Stage I Notice?" (Doc. # 98 at 4).   The Court agrees with Plaintiffs that "there is no magic number requirement," for conditional certification under the FLSA. (Id.).   Because the Court has provided a detailed discussion of the applicable law and its reasoning for granting conditional certification herein, "clarification" is not warranted and the Motion is denied as moot.

class of "retail account executives").  The Court will next determine whether the Account Service Representatives are similarly situated.

### B.  Are the Employees Substantially Similar?

As explained in Morgan, the plaintiff's burden of showing a "reasonable basis" for the claim that there are other similarly situated employees is "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." 551 F.3d at 1260-61 (internal citations omitted).

As detailed below, the record supports that all Account Service Representatives were classified as exempt from overtime and completed standardized duties. Thus, for the purposes of the notice stage, the Court finds that they are "substantially similar."  Specifically, Plaintiffs tender the declarations of the following present and former Account Service Representatives, describing their duties and pay arrangements: Karen Palma (Doc. # 33-2); Hallie Selgert (Doc. # 33-3); Peter Hong (Doc. # 33-4); Lisa Hobday (Doc. # 33-5); Aixa Reynolds (Doc. # 33-6); Christopher Smith (Doc. # 33-5); Fernando Pereira (Doc. # 33-6); and Hector Casta (Doc. # 34-

1).[2]

Although the declarations submitted by the Account Service Representatives vary from declaration to declaration, they share common core allegations. The Court reproduces salient portions of Palma's declaration below:

> Other than small differences in the "point of contact" with the different customers, based on their size, the job duties I perform as an ASR do not change in any material way, nor does the manner in which I am paid by MetroPCS.
> . . . .
> [My] fellow ASRs and I are employed by MetroPCS to perform standardized duties of their ASR position.
> Specifically, as ASRs, our primary duty is to develop and maintain supportive relationships with MetroPCS' existing accounts, as assigned to us by MetroPCS, regardless of which account it is.
> To ensure that we perform these duties in a uniform and consistent manner, MetroPCS has specific training programs that I, as well as all other ASRs, are required to complete on a regular basis, regarding MetroPCS' ever-changing line-up of products and services.
> Throughout my employment with MetroPCS, I have regularly worked over forty (40) hours per week. Despite the fact that I have worked overtime hours in many weeks of my employment with MetroPCS, MetroPCS has never paid me any overtime premiums for such overtime hours.
> . . . .
> MetroPCS failed to pay me time and a half for any of my overtime hours . . . because it has classified everyone in its ASR position as exempt from overtime.

---

[2] Both the declaration of Lisa Hobday and the declaration of Christopher Smith are labeled as (Doc. # 33-5). Likewise, the declarations of both Aixa Reynolds and Fernando Pereira are labeled as (Doc. # 33-6).

. . . .
        During my employment with MetroPCS, I have
personally observed that there were numerous
similarly situated ASRs who: (a) perform the same
or similar job duties that I perform; (b) are paid
a combination of salary and commissions; (c) work
over 40 hours in many workweeks; and (d) are not
paid any overtime wages due to MetroPCS' uniform
misclassification of all ASRs as exempt from
overtime.

(Doc. # 33-2 at ¶¶ 13-31).

It is unnecessary to repeat the varied declaration

statements that are before the Court from each Account Service

Representative, as each declaration is similar and asserts

that Account Service Representatives perform "standardized

duties" with the primary duty being to develop and maintain

supportive relationships with MetroPCS's existing accounts.

    Plaintiffs have also filed the uniform "Job Description"

of a MetroPCS Account Service Representative as listed on job

postings for Pennsylvania, Florida, New York, Michigan,

Georgia, and Rhode Island, which states as to "Essential

Duties and Responsibilities:"

    *    Achieves account support objectives
    *    Supports indirect/third party retail
         distribution channels
    *    Maintains reporting requirements and forecasts
    *    Effectively communicates and executes
         information and programs including approved
         compensation plans
    *    Sets up and delivers all training requirements
         for third party retailers in the markets
    *    Supports local promotional events for

9

indirect/third party retail channels
(Doc. # 33-8 at 2).

In addition, Plaintiffs filed the declaration of a former MetroPCS manager, Tracy Evans. (Doc. # 33-7). In her declaration, Evans states that she "interacted with [MetroPCS] ASRs on an almost daily basis," and that these employees perform standardized duties. (Id. at ¶ 11). She further opines, "As a result of MetroPCS' actions, no ASR receives proper overtime compensation under the Fair Labor Standards Act." (Id. at ¶ 29). However, as explained below, the Court strikes her declaration.

In response, MertoPCS has inundated the Court with a barrage of competing declarations as well as a motion to strike Plaintiffs' declarations. However, MetroPCS's documents and evidence exceeds by far this Court's limited inquiry at the notice stage of the conditional certification process. The court was faced with a similar situation in Simpkins v. Pulte Home Corporation, No. 6:08-cv-130-Orl-19DAB, 2008 U.S. Dist. LEXIS 64270 (M.D. Fla. Aug. 21, 2008). There, Pulte classified all superintendents as exempt from overtime and Simpkins, a superintendent, filed a FLSA action. Id. at *10-11. Simpkins sought conditional certification. Id. Similar to MetroPCS's strategy, "Pulte present[ed] a mass of

10

evidence in opposition to Simpkins collection of declarations," including evidence showing that superintendents had varying levels of education, training, and licensure; worked on different types of projects; had varying amounts of discretion; and worked flexible hours. Id. at *14.

In response to the avalanche of evidence presented by Pulte, the court indicated that "more is not necessarily better, and the evidence Pulte presents goes far beyond the scope of this Court's review at the first stage of the certification process." Id. at *15. The Simpkins court granted conditional certification after finding that Simpkins demonstrated a reasonable basis to conclude that other similarly situated superintendents wished to join the action.

Following the sound reasoning of Simpkins, this Court determines that Plaintiffs have shown that there are similarly situated Account Service Representatives who seek to join this action, and MetroPCS's arguments arrayed against conditional certification are premature. An analogous situation arose in Reyes. There, a group of retail account executives who performed the same role as Account Service Representatives for AT&T sought conditional certification of a FLSA action. AT&T countered with a deluge of competing affidavits, including

11

numerous affidavits by current retail account executives claiming that they did not intend to join in the action. The court declined AT&T's invitation to engage in a "battle" of the affidavits. 801 F. Supp. 2d at 1358. This Court similarly considers, but is not convinced by, MetroPCS's declarations indicating that 131 of its current Account Service Representatives are not interested in joining the action. See Creely v. HCR Manorcare, Inc., 789 F. Supp. 2d 819, 839 (N.D. Ohio 2011)("[T]his Court is not swayed by [defendant's] submission of thirty-five 'happy camper' affidavits. . . . [T]he Court's function at this stage of conditional certification is not to perform a detailed review of individual facts from employees hand-picked by [defendant]. Those questions of breadth and manageability of the class are left until the second stage analysis following the receipt of forms from all opt-in plaintiffs.").

Nor do MetroPCS's declarations pinpointing variations in the Account Service Representatives' schedules, duties, and practices convince the Court that conditional certification is unwarranted. See Vondriska, 564 F. Supp. 2d at 1335 ("Variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at the notice stage.");

Morgan, 551 F.3d at 1261-62 (courts should consider at the
second stage "the various defenses available to defendant[s]
[that] appear to be individual to each plaintiff.");
Pendlebury v. Starbucks Coffee Co., No. 04-cv-80521, 2005 U.S.
Dist. LEXIS 574, at *10 (S.D. Fla. Jan. 3, 2005)(granting
conditional certification and refusing to consider factual
dispute raised by defendant at the conditional notification
stage where plaintiff offered affidavits establishing a
similarly situated class).

Thus, to the extent MetroPCS tenders competing
declarations, the Court declines to engage in a credibility
analysis and a battle of the declarations. The Court finds
that the Account Service Representatives are substantially
similar for the notice stage of conditional certification.

C. **MetroPCS's Motion to Strike**

Further, to the extent MetroPCS seeks an order striking
from the record Plaintiffs' declarations, the Court denies the
Motion with minor exception. The Court emphasizes that the
issues raised in the motion to strike do not diminish
Plaintiffs' ability to meet their lenient burden at the notice
stage of conditional certification.

Specifically, MetroPCS correctly points out that the
declarations Plaintiffs tendered on behalf of former and

13

current Account Service Representatives are strikingly similar to the declarations filed in the <u>Reyes</u> case, in which the Morgan and Morgan firm that represents Palma and Selgert represented a class of retail account executives in a FLSA suit against AT&T. The retail account executives in <u>Reyes</u> performed similar duties as the Account Service Representatives in this action, and the <u>Reyes</u> court granted conditional certification of the action after being presented with opposing declarations similar in kind to those presented by MetroPCS here. This Court finds no reason to strike Plaintiffs' declarations because they resemble those filed in the <u>Reyes</u> case.[3] Rather, it stands to reason that counsel for Palma and Selgert, after filing a successful motion for conditional certification in a factually and procedurally apposite case, would mirror their filings in this case in hopes of achieving a similar result.

However, the Court will strike from the record the declaration filed by former MetroPCS manager Tracy Evans.

---

[3] The Court rejects MetroPCS's assertion that Plaintiffs' declarations "were cut-and-pasted from - and are virtually identical to - declarations filed by Plaintiffs' counsel" in the <u>Reyes</u> case. (Doc. # 43 at 1). Plaintiffs' declarations are certainly similar to those filed in the <u>Reyes</u> case, but there is nothing improper about that, as they were prepared by the same team of attorneys at the same firm. The Court is likewise unconvinced that the declarations presented here are a "sham" as asserted by MetroPCS.

Among other things, she entered into a separation agreement with MetroPCS on May 17, 2011.  In consideration of $47,960.93, she agreed, inter alia, to refrain from making any harmful or negative statements about MetroPCS. (Doc. # 43-5 at ¶ 5).  Evans' statement that MetroPCS has violated a federal law, specifically the FLSA, is a harmful and negative statement about MetroPCS.  The Court accordingly declines to consider her declaration and strikes it from the record. However, even in the absence of Evans' declaration, the Court still finds that Plaintiffs met their burden at this stage of the proceedings.

### D.   <u>Geographical Scope of the Litigation</u>

MetroPCS argues that "Plaintiffs' proposed collective action is overbroad and in any case must be limited to the locations where Plaintiffs worked within the limitations period." (Doc. # 44 at 18). MetroPCS specifically seeks to limit this action to Account Service Representatives located in Florida, New York, and California.  In support of this contention, MetroPCS relies on an order conditionally certifying a class of technicians in <u>Thomas v. All Year Cooling & Heating, Inc.</u>, No. 11-cv-61274, 2012 U.S. Dist. LEXIS 11831, at *4 (S.D. Fla. Feb. 1, 2012), in which plaintiffs sought to certify employees who worked at a single

15

Broward County, Florida location.  That case is not persuasive because the motion for conditional certification was unopposed and there is no indication that the defendant in that case maintained employees on a nationwide basis.

Plaintiffs, on the other hand, have presented a reasonable basis for finding that all Account Service Representatives nationwide are similarly situated.  Plaintiffs offer declarations from Account Service Representatives from Florida, New York, and California and have supplied the Court with uniform job descriptions for Account Service Representative job openings in Pennsylvania, Florida, New York, Michigan, Georgia, and Rhode Island.  Furthermore, MetroPCS's annual report for 2011 describes itself as "the fifth largest facilities-based broadband mobile communications provider in the United States based on the number of customers served. We offer wireless broadband mobile services under the MetroPCS brand in selected major metropolitan areas in the United States." (Doc. # 33-1 at 3).

Considering these factors at the notice stage, the Court declines to limit the scope of the collective action and grants nationwide conditional certification.  See, e.g., Carrera v. UPS Supply Chain Solutions, Inc., No. 10-cv-60263, 2011 U.S. Dist. LEXIS 34611 (S.D. Fla. Mar. 31, 2011)

(conditionally certifying a nationwide class of UPS drivers where opt-in plaintiffs had collectively worked in Florida, New Jersey, New York, and Virginia); <u>Reyes</u>, 801 F. Supp. 2d at 1357 (conditionally certifying a nationwide class of retail account executives based on affidavits of employees who worked in four stores where defendant operated on a nationwide basis).

**E.   <u>Form and Content of Class Notice</u>**

Plaintiffs' proposed form of class notice (Doc. # 33-9) is before the Court.  MetroPCS lodges a number of specific objections to the notice and "requests the opportunity to meet and confer regarding the proper form of notice" in the instance that the Motion for Conditional Certification is granted.  (Doc. # 44 at 20).  Having granted nationwide conditional certification, the Court directs the parties to confer regarding the proposed class notice and the means of dissemination of the notice.  The parties are directed to file a Jointly Proposed Notice and accompanying status report by December 30, 2013.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiffs' Motion to Conditionally Certify Collective Action and Facilitate Notice of Potential Class Members

17

(Doc. # 33) is **GRANTED**.

(2)   The parties are directed to file a Jointly Proposed Notice and accompanying status report by December 30, 2013.

(3)   MetroPCS Wireless, Inc.'s Motion to Strike Declarations Submitted in Support of Plaintiffs' Motion for Conditional Certification (Doc. # 43) is **GRANTED IN PART** as to the declaration of Tracy Evans and is otherwise **DENIED**.

(4)   Plaintiffs' Motion for Clarification and/or for Leave to Conduct Declaration Discovery, if Necessary (Doc. # 98) is **DENIED** as moot.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 16th day of December, 2013.

Virginia M. Hernandez Covington

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record