## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KAREN PALMA and HALLIE
SELGERT, on behalf of themselves and
those similarly situated,**

                    **Plaintiffs,**

                                       **CASE NO.:   8:13-cv-698-VMC-MAP**

     **vs.**

**METROPCS WIRELESS, INC.,**

                    **Defendant.**

_____/

## JOINT MOTION FOR REVIEW AND APPROVAL OF SETTLEMENT AGREEMENT AND ORDER OF JUDGMENT DISMISSING CASE WITH PREJUDICE

COME NOW Plaintiffs, Karen Palma ("Palma"), and Hallie Selgert ("Selgert") (collectively referred to herein as "Plaintiffs") and Defendant, MetroPCS Wireless, Inc. ("MetroPCS" or "Defendant")(Plaintiffs and Defendant collectively referred to herein as the "Parties"), by and through their undersigned counsel and pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and 29 U.S.C. §216(b), and move this Court for a review and approval of their Settlement and Full and Final Release of all Claims.  As grounds for this Motion, the Parties show as follows:

I.   **BACKGROUND**

      A. **Factual Allegations.**

Plaintiffs are members of a conditionally certified FLSA Collective Action.  Plaintiffs and the FLSA Collective Action class members are approximately 69 current and former ASRs

who work or worked for METROPCS throughout the United States, at various times between March 2010 and December 2013.

Plaintiffs' allege their job duties involved/involve primarily developing and maintaining supportive relationships with METROPCS' existing non-company-owned sales outlets, as assigned to them by METROPCS. Plaintiffs go on to allege that to ensure that all ASRs performed these duties in a uniform and consistent manner, METROPCS had specific training programs that they required all of their ASRs to complete on a regular basis, regarding METROPCS's ever-changing line-up of products and services. Plaintiffs contend that after receiving their specific training on products, services and contracts from METROPCS, it was and is the job of every ASR to go to his or her assigned accounts and relay the information that has been given to them in their required training programs.

In this lawsuit, Plaintiffs alleged that METROPCS violated the Fair Labor Standards Act ("FLSA"), by, *inter alias,* misclassifying them as administratively and/or outside sales exempt and failing to pay them overtime when they worked more than 40 hours in a workweek. *See* Amended Complaint, D.E. 31, generally.

## B. **Procedural History**.

Plaintiffs Palma and Selgert filed their initial complaint on March 18, 2013, alleging violations of the FLSA and NYLL, as a result of METROPCS's alleged misclassification of certain individuals working as ASRs. *See* D.E. 1. The complaint sought certification, pursuant to Section 216(b) of the FLSA, of a nationwide collective action, as well as certification, pursuant to Rule 23 of the Fed. R. Civ. Proc., of a class action under the New York Labor Law. *See id.* Subsequently, Plaintiffs filed their Amended Complaint, the operative complaint, in which they sought to pursue solely their claims under the FLSA. *See* D.E.s 31, 267 (Order

striking Second Amended Complaint and stating Amended Complaint remains operative Complaint).

The parties vigorously disputed both the merits of the Complaint's (and Amended Complaint's) allegations and whether the Litigation was appropriate for conditional certification and/or class certification.

On December 16, 2013, the Court entered an Order conditionally certifying the Litigation as a collective action pursuant to 29 U.S.C. 216 (b).  *See* D.E. 125.

Pursuant to Court-approved notice, notice was sent out to approximately 392 individuals who worked in Covered Positions during the Covered Period, and thus given an opportunity to join the Litigation under the terms of 29 U.S.C. § 216(b).  *See* Declaration of Andrew Frisch ("Frisch Decl."), attached hereto as Exhibit A, at ¶ 26.  Ultimately, a total of 69 individuals joined the Litigation by submitting opt-in forms.  *See id.*, ¶ 27; *see also* Docket, generally.

## C. <u>Discovery</u>.

The parties engaged in significant discovery before agreeing to resolve this case. The parties served and responded to interrogatories and document requests for two (2) Plaintiffs and six (6) other opt-in Plaintiffs and Rule 23 class members. *Id*. METROPCS produced tens of thousands of pages of documents in response to Plaintiffs' document requests, including corporate policies, training materials, payroll records, personnel files, production reports, emails, and memoranda. *Id*. ¶¶ 28-35.  In addition, the parties conducted the depositions of eight Plaintiffs, as well as two (2) separate all-day depositions of METROPCS's designated corporate representative witnesses.  Plaintiffs' counsel also interviewed many of opt-in Plaintiffs regarding their duties and hours worked. *Id*.

## D.  **Dispositive Motions and Defendants' Motion to Decertify.**

At the conclusion of discovery in the case, the parties cross-moved for summary judgment, with each party claiming that they were entitled to judgment as a matter of law on the issue of whether Plaintiffs were properly deemed exempt under the FLSA.  *See* D.E.s 238 and 246.  Additionally, METROPCS filed a Motion for Decertification.  *See* D.E. 239.

## E.   **Settlement Negotiations and Mediation.**

With the parties' respective motions for summary judgment and Defendant's Motion for Decertification pending, the Parties participated in an all-day mediation on May 28, 2014, with the assistance of Mediator Jay M. Cohen in Orlando, Florida.  *See id.*, ¶¶ 38-45.  Mr. Cohen is one of the most knowledgeable and skilled wage and hour class action mediators in the country. *See id.*, ¶ 39.

In preparation for mediation, METROPCS provided Class Counsel with additional information about the facts underlying the claims made in the Litigation.  *See id.*,  ¶ 41. Specifically, METROPCS provided detailed pay records and, to the extent they existed, partial time records (in the form of MIDAS database records) pertaining to each of the 69 Plaintiffs and opt-in Plaintiffs.  *Id.*

Although the mediation did not result in settlement of the claims, the Parties continued to pursue intense settlement negotiations in the days and weeks that followed.  *See id.*, ¶¶ 42-43. Ultimately, after several weeks of additional negotiation, the Parties reached a settlement in principle regarding Plaintiffs claims on June 19, 2014, and filed a Joint Notice of Settlement with the Court reflecting same.  *See* D.E. 255.  After additional negotiation, the Parties then reduced their agreement to a formal Settlement Agreement, including a settlement pertaining to Plaintiffs' FLSA claims.   The parties  initially  sought  the  Court's  approval  of  the  FLSA

agreement along with preliminary approval of two Rule 23 classes, one arising under New York law and the other arising under California law, but the Court in its discretion elected not to exercise supplemental jurisdiction over those state law claims.  In light of the procedural posture of the case, and the fact that the Court requested a new Motion pertaining solely to the FLSA claims, the Parties are filing the instant Motion, after having made revisions to their prior settlement agreement.  Thus, by their instant Motion the Parties solely seek approval of the portion of their settlement agreement pertaining to the FLSA claims, currently pending before this Court.  *See* Exhibit 1 to Frisch Decl.

### F.  Factual Disputes and Legal Uncertainties Facing Both Parties Led to the Below Settlement.

The Defendant submitted a motion for summary judgment, wherein it argued that the Plaintiffs were exempt employees under the administrative exemption and/or the outside sales exemption..  In support of its position, Defendant pointed out that ASRs picked what time they wanted to start work, could take off in the middle of the day, could end work whenever  they deemed it appropriate and could determine which stores to visit.  Defendant also maintained that ASRs had considerable discretion and judgment as to how they performed their job.  Significantly, Defendant argued it was not a proper party and that various subsidiaries were Plaintiffs'' employer.  While Plaintiff disputes the above and believes disputed facts exist as to deny summary judgement, it does concede Defendants supported its position with citations to the record and how the court ultimately would rule was unknown.  These uncertainties led to compromise by both parties as to the settlement amount.

The Defendant also submitted a motion to decertify.  Here, Defendant argued that each MetroPCS region was unique unto itself and, thus, decertification was warranted.  Like the summary judgment, Plaintiff believes it had counter arguments supporting denial of this motion.

Again, Defendant did have some record support for its position and this too led to the compromise below.

Even if Defendant's motions were denied, the outcome of a jury trial is never certain. The Plaintiffs would argue the facts as to why they were non-exempt and the Defendant would argue its best facts. How a jury would interpret these facts for a position which paid $40,000 to $80,000 per year, and did permit ASRs flexibility on start time and hours was another uncertainty.

Finally, assuming Plaintiffs prevailed on liability, the question would be how many hours of overtime per week was worked. Plaintiffs contend the number was approximately 1-10 hours per week on average. Defendant argues Plaintiffs did not work overtime. As Defendant classified Plaintiffs as exempt they did not maintain formal records of the time worked by ASRs. Defendants, however, strenuously argued it had documented proof that Plaintiffs did not work overtime based on a sales program ASRs completed each day/week setting out the dates and time they were at stores. Plaintiffs contend these records are not to be used as an indicia of the hours worked and never were intended as such. Indeed, Plaintiffs contend they were told just to write anything in the "time" box. Nonetheless, if this document is believed by a jury to accurately reflect hours, it does support Defendant's no overtime position. This too was a factor in leading the parties to compromise in their positions to reach a settlement.

## II. **Summary of the Settlement Terms**

### A. **The Settlement Fund.**

METROPCS has agreed to create a Settlement Fund ("the Fund") of $550,000.00, as set forth in ¶¶ 1.16 and 3.2(A)(2) of the Settlement Agreement, in order to resolve the Plaintiffs' FLSA claims. *See* Frisch Decl., Ex. 1. The Fund will cover awards to class

members, Court-approved attorneys' fees and costs, Court-approved service payments to Selgert and one opt-in Plaintiff, Hector Casta ("Casta"), and the cost of administering the FLSA settlement. *Id.*, ¶¶ 3.13, 3.2(A)(2).  In addition to the Fund, METROPCS is responsible for paying the employer's share of employment taxes, including federal and state payroll taxes, the employer's share of the FICA tax, and any federal and state unemployment tax due on the portion of class members' settlement awards that is allocated to wages. *Id.*

### B.   Release.

 FLSA Class members will release their FLSA claims, as well as their respective state wage and hour claims[1], by endorsing the release printed on their settlement checks. *Id.*

### C.   Eligible Employees.

The FLSA Class consists of the 69 current and former ASRs who work or worked for METROPCS within the United States at any time from three (3) years prior to the date they filed their Consent to Join the lawsuit, through the date on which the Court grants approval of the settlement. Settlement Agreement, ¶ 1.13.

### D.   Allocation Formula.

FLSA Class members will be paid pursuant to an allocation formula based on their dates of employment during the applicable limitations periods.  *Id.* ¶¶ 3.14, 3.15(C).  The allocation formula is as follows:

1. The Settlement Fund will be reduced by court approved attorney fees, costs and administrator fees.  The amount remaining in the Settlement Fund after these deductions shall be called for purposes of this motion, the Distributable Fund.

---

[1] FLSA Class members who are Dual class members (also members of either the California Rule 23 Class or the New York Rule 23 Class, will not release any of their state law claims, upon receipt and acceptance of their FLSA settlement checks.

2.  The Distributable Fund will be divided by the summation of the total weeks worked during the applicable limitation period by all 69 opt-ins.[2]  This number gives us the a weekly average.

3.  The weekly average is then multiplied by the number of weeks during the applicable limitation period each opt-in worked.  Thus, each person is getting a different amount.

Under the terms of the FLSA Settlement, each Plaintiff and FLSA Class Member will receive credit for slightly more than **_five (5) overtime hours of work_** for each week they worked within the applicable limitations period.

No eligible class member will receive an award that is less than $100.00 before taxes are deducted. *Id*. ¶ 3.15(B). Settlement awards will be allocated 50% to wages and 50% to interest and liquidated damages. *Id*. ¶ 3.6(A).  Pursuant to the allocation formula(s), FLSA class members will receive an average of $7,971.01, before attorneys' fees, costs, and administration fees are deducted (approximately $5,314.01 net of these amounts).  *See* Frisch Decl., ¶¶ 47-48.  As noted above, these awards credit each Plaintiff with having worked five (5) overtime hours each week, despite the fact that Defendants dispute whether Plaintiffs worked any overtime hours at all, and despite the other bona fide disputes regarding many of the material issues in the case, as further outlined below.  *Id.*

**E.   Attorneys' Fees and Litigation Costs.**

Under the terms of the Settlement Agreement, Plaintiffs' counsel has agreed to accept $183,333.33 as payment of his reasonable attorney's regarding the litigation of the FLSA claims.

---

[2] As the parties have no hard data on the number of hours actually worked by ASRs, it is a practical impossibility to definitively state how many hours per week each ASR worked.

Plaintiffs' counsel has agreed to accept this amount, despite the fact that his lodestar far exceeds this amount.  *See* Frisch Decl., ¶¶ 56-58 .  Like Plaintiffs, Plaintiffs counsel has agreed to accept an amount less than the total attorneys fees claimed, given the attendant risks of going forward with the litigation.

### F.   Service Awards.

In addition to their individual awards under the allocation formula, Selgert and Casta, one of the Florida opt-in Plaintiffs who actively participated in the Litigation, by completing discovery responses and appearing for deposition, will apply for additional payments in recognition of the services they rendered on behalf of the class ("Service Awards").   Settlement Agreement, ¶¶ 1.30, 3.4.

Such service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation." *Khait*, 2010 WL 2025106, at *9; *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012)(discussing the public policy reasons for incentive/service awards to class representatives in the context of FLSA litgiation). Like the application for attorneys' fees, the Settlement Agreement is not conditioned on the award of Service Awards. Ex. 1 (Settlement Agreement) ¶ 3.4. Plaintiffs will file a motion for approval of Service Awards along with their motion for final approval of the settlement, and also address same here, to the extent that a portion of same are payable from the common fund allocated to the FLSA Settlement.

### G.   Settlement Claims Administrator.

The parties have selected Simpluris to serve as the settlement claims administrator. The claims administrator's fees will be paid out of the Fund, and they are estimated to be less than $4,000.00. Ex. B (Settlement Agreement) ¶ 2.1.

### III. <u>ARGUMENT</u>

#### A. <u>Legal Standard</u>

In considering the Parties' Motion, the Court is required to "determine[ ] that a settlement proposed by an employer and employee[ ], in a suit brought by the employee[ ] under the FLSA, is a fair and reasonable resolution of a bona fide dispute over an FLSA provision." *Lynn's Food Stores* v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." Id. at 1354; see also Sneed v. Sneed's Shipbuilding, Inc., 545 F.2d 537, 539 (5th Cir. 1977). "[T]he district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores*, 679 F.2d at 1353 (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946)).

When considering a motion to approve an FLSA settlement agreement, courts weigh a number of factors, including: "(1) the existence of fraud or collusion behind the settlement: (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Leverso v. Lieberman*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). In weighing these factors, "the Court should keep in mind the ***'strong presumption'*** in favor of finding a settlement fair." *Id*. at 1146 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977))(emphasis added).

### B. The Parties' Settlement Agreement Should Be Approved

**1.      The proposed settlement agreement is a fair and reasonable resolution of a bona fide dispute over an FLSA provision**

The proposed settlement agreement is fair and reasonable for reasons that include: (1) Plaintiffs are due to receive a meaningful percentage of what they claim is the full value of their claim, (2) Plaintiffs' attorney is due to receive an agreed amount in fees and expenses, that is dwarfed by his actual lodestar, and (3) the additional consideration provided by Plaintiffs (outside of the release of their wage claim) was bargained for, is supported by additional monetary and non-monetary consideration and valuable benefits to Plaintiffs, and is of the type that courts in this District have recognized will not undermine the fairness of the agreement as to the FLSA claim.

**2.      The Parties have a bona fide dispute over an FLSA provision**

As explained above, Plaintiffs allege that, because they were misclassified as exempt, they were not paid for overtime hours worked as required by the FLSA.  On the other hand, MetroPCS maintains that Plaintiffs were exempt from the payment of overtime pursuant to the "administrative exemption" of the FLSA set forth in 29 U.S.C. §213(a)(1), as well as the so-called "outside sales exemption."  While Plaintiffs dispute this, to the extent the Court or jury agreed, Plaintiffs would have received nothing for their claims, regardless of the number of overtime hours they worked each week.[3]  Thus, because the legal analysis here is factually driven, there is a genuine dispute regarding whether Plaintiffs qualify as employees exempt from the FLSA's overtime requirements.

---

[3] Because the Parties have fully briefed their respective positions regarding Defendant's alleged exemptions in their cross-motions for summary judgment, the do not repeat their arguments in length here.

Similarly, due to the fact that Defendant failed to keep time records for Plaintiffs, or any of their ASRs, based on their belief that such employees were exempt from the FLSA's overtime provisions, it was and is impossible to say with any specificity how many overtime hours each ASR worked each week.  While virtually all ASRs agreed that they worked *some* overtime hours in *some* weeks, the vast majority acknowledged there were some weeks in which they worked no overtime at all.  Further, even with regard to the weeks in which Plaintiffs claimed to have worked overtime (approximately 1-10 hours per week during weeks in which they claimed to have worked overtime), Defendant produced a mass of evidence disputing Plaintiffs' claims in this regard.  For example, Plaintiffs calculations assumed that once they checked their first email of the day, the remainder of work they performed at home, or in the field for the rest of the day was all compensable each day as part of the "continuous workday." During discovery, Defendant produced evidence that countered this theory, both because it appeared that at-home work was neither scheduled nor required at any specific time, and because Plaintiffs often took breaks of 30 minutes or more at various points during their workdays. Additionally, to the extent they recorded any portion of their hours in the form of a sales activity database each day—records Defendant argued accurately depicted the vast majority of Plaintiffs' hours worked—such records rarely if ever showed any Plaintiff working over 40 hours.  Indeed, in many weeks, the records showed hours worked in the field for most Plaintiffs of approximately 25-35 hours total.

Moreover, while Plaintiffs allege that Defendant's violations of the FLSA were willful, Defendant produced several key pieces of evidence in discovery that they relied upon in order to meet their burden of proof to demonstrate a "good faith" defense.  Chief among this evidence was the fact that Defendant performed multiple internal companywide audits in the

years preceding Plaintiffs' Complaint in this case, many of which focused in part on whether their ASRs were properly deemed to be exempt under the FLSA.  While Plaintiffs would have (and did) argue that such evidence was insufficient to meet their burden, the fact remains that even if Plaintiffs had defeated Defendant's exemption arguments, there was still as sufficient likelihood that they would not received an award of liquidated damages in addition to any unpaid overtime award(s) they received.

Discovery in this case has been substantial, and the Parties have exchanged tens of thousands of documents.  All parties assert that the documents exchanged support their claims/defenses.  For these reasons, there are significant bona fide issues of contention in the case.  As such, the Parties were required to handicap the odds that they would prevail on their respective claims/defenses in order to ascertain the fair settlement value of the case.  All Parties did this and have reached an agreement as memorialized in their Settlement Agreement.

**3.     The proposed settlement agreement is a fair and reasonable resolution**

In determining whether the settlement is fair and reasonable, the Court must consider the following factors:

(1)     The existence of fraud or collusion behind the settlement;

(2)     The complexity, expense, and likely duration of the litigation;

(3)     The stage of the proceedings and the amount of discovery completed;

(4)     The probability of plaintiff's success on the merits;

(5)     The range of possible recovery; and

(6)     The opinions of the counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527. 1531 n.6 (11th Cir. 1994). Each of these factors supports approving a settlement in this case. Specifically, there is no indication of fraud or collusion, further litigation would likely be expensive and lengthy, the Parties have exchanged sufficient information to fully assess the claims, the information produced during discovery has shown that Plaintiffs will have a difficult time defeating Defendant's defenses, the evidence does not support any greater recovery for Plaintiff than what was agreed to by the Parties, and counsel for each Party believes the settlement to be fair and reasonable.

There is no evidence of fraud or collusion in the settlement. Each of the Plaintiffs initially claimed that they worked approximately 10-20 overtime hours each week. However, at deposition and through further investigation, it became clear that the true number of overtime hours that Plaintiffs were claimed was, on average, between 1-10 hours per week. Here, each Plaintiff is recovering an amount that represents an award of 5 hours per week, notwithstanding the strong defenses that Defendant believes that they have raised. Analysis of "the amount of the settlement in relation to the potential recovery" weighs heavily in favor of the Court approving the settlement.

Counsel for both parties are experienced attorneys who practice in this area of law, and they represent that this settlement is a fair and reasonable compromise of Plaintiffs' claims in this case. Although Plaintiffs and their counsel believe the claims asserted in this case have merit, they recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the litigation against MetroPCS through trial and, if they were successful, through possible appeals.   In addition, Plaintiffs and their counsel also recognize and

acknowledge the uncertain outcome and risk of any litigation, the difficulties and delays inherent in such litigation, and the likelihood of protracted appellate review. As a consequence, Plaintiffs' counsel believes that the settlement reached confers benefit upon Plaintiffs commensurate to the risk of litigation, and that the settlement is fair, reasonable, adequate, in accordance with the law, and in the best interest of Plaintiffs.

Similarly, although MetroPCS and its counsel believe the claims asserted in this action lack merit and that MetroPCS acted in good faith in characterizing Plaintiffs as Administrative and/or Outside Sales employees, exempt from overtime pay, they nonetheless believe that further litigation with respect to Plaintiffs would be protracted, expensive, and contrary to MetroPCS's best interests.

### 4. The attorneys' fees are fair and reasonable

Both parties further agree that the legal fees awarded to Plaintiffs' attorney in the Agreement are fair and reasonable. "The FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wrong employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

In calculating an award of attorney fees the Court must use the lodestar method and determine the number of hours reasonably expended on a case multiplied by a reasonable hourly rate. *See Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp. 2d 1259, 1264 (M.D. Fla. 2008). The Agreement provides that MetroPCS will pay to Plaintiffs' counsel $183,333.33 for attorney fees, as well litigation expenses incurred with regard to the FLSA claims.

In light of Plaintiffs' counsel's lodestar which far exceeds the amount he has agreed to accept as his attorneys fees with regard to the prosecution of Plaintiffs' FLSA claims,

the amount of fees is inarguably reasonable.  Counsel avers there is no reason to believe Plaintiffs' recovery was adversely affected by the amount of attorney fees agreed upon by the parties and the proposed award of attorney fees and costs in this case is more than fair and reasonable.

### 5.     The Modest Service Payments Are Appropriate Under the Circumstances of this Case.

In addition to the allocation that Hallie Selgert and Hector Casta will receive as FLSA class members under the settlement, the settlement agreement also allocates $5,000.00 to Selgert and $1,000.00 to Casta, in recognition of their work on behalf of the class.  Such participation awards are fairly typical and particularly appropriate here, in light of the efforts that both Selgert and Casta put forth to aid in obtaining the class recovery.

"[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action."  *David v. American Suzuki Motor Corp.,* 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g., Ingram v. The Coca–Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chi. Bd. Options Exchange, Inc.,* 844 F.Supp. 1226, 1267–68 (N.D.Ill.1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

"While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to

class representatives at the conclusion of a successful class action. In fact, " '[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.' " *Allapattah Servs., Inc. v. Exxon Corp.,* 454 F.Supp.2d 1185, 1218 (S.D.Fla.2006) (quoting *supra*); *see also Su v. Elec. Arts, Inc.,* No. 6:05–cv–131–Orl–28JGG, 2006 WL 4792780, at *1, 2 (M.D. Fla. Aug.29, 2006) (unpublished Report and Recommendation), adopted, 2007 WL 2780899 (M.D. Fla. Sept.20, 2006) (unpublished); *see also Sheppard v. Consol. Edison Co. of N.Y., Inc.,* 2002 WL 2003206, at *6 (E.D.N.Y. Aug.1, 2002) (unpublished) (collecting cases). "Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." *Ingram,* 200 F.R.D. at 694.

Given the amount of time and effort put forth Selgert and Casta and the inherent risk taken, and upon consideration of the amount proposed, the service payments is reasonable and should be awarded.

### 6. Courts in the Middle District of Florida Approve Settlement Agreements Where Employees Receive Additional Consideration in Exchange for General Releases, Non-Disparagement, and Confidentiality Agreements[4]

As stated above, following the June 25, 2014 mediation, the Parties negotiation the Full Settlement Agreement. Specifically, Defendant negotiated for a general release, a non-disparagement agreement and a confidentiality agreement from the Plaintiffs who are to receive participation awards, Selgert and Casta. In exchange for this, Selgert and Casta negotiated for a general release, a non-disparagement, and separate monetary consideration.

---

[4] Of the 69 Plaintiffs, only Plaintiff, Hallie Selgert, and opt-in Plaintiff, Hector Casta will be signing agreements for separate compensation, containing a general release, non-disparagement language and confidentiality agreements. No other FLSA Plaintiff or opt-in is signing such an agreement as part of the resolution of the FLSA claims.

Courts in the Middle District of Florida have routinely approved settlement agreements where the employee received additional consideration in exchange for concessions to the employer that were beyond a release of the FLSA claims. *See, e.g., Claflin v. Shelter Mortgage Company, L.L.C.*, Case 6:13-cv-01028-RBD-DAB (Dkt. 27) (M.D. Fla. Dec. 2, 2013), report and recommendation adopted Dkt. No 27 (M.D. Fla. Dec. 26, 2013) (Roy B. Dalton, Jr., J.) (approving a settlement agreement where employee received separate monetary compensation in exchange for agreeing to a general release and other concessions); *Espinah v. Thrifty Specialty Produce of Palm Bay, Inc.*, No. 6:13-CV-532-ORL-28, 2013 WL 4047011, at *3 (M.D. Fla. Aug. 9, 2013) (citing *Irizarry v. Percepta, LLC*, Case No. 6:12–cv–1141–37KRS, Dkt. No. 43 (M.D. Fla. June 20, 2013), report and recommendation adopted Dkt. No. 44 (M.D. Fla. July 10, 2013) (approving a settlement agreement where employee received separate monetary compensation in exchange for agreeing to a general release and other concessions); *Bacorn v. Palmer Auto Body & Glass, LLC*, No. 6:11–cv–1 683–Orl–28KRS, 2012 WL 6803586 (M.D. Fla. Dec.19, 2012), report and recommendation adopted 2013 WL 85066 (M.D. Fla. Jan.8, 2013) (approving a settlement agreement where employee signed a general release in exchange for a mutual release from employer); *Bright v. Mental Health Res. Ctr., Inc.*, No. 3: 1 0–cv–427–J– 37TEM, 2012 WL 868804, at *5 (M.D. Fla. Mar.14, 2012) (approving the settlement agreement as to one employee who signed a general release in exchange for the employer foregoing its counterclaims against her); *Vergara v. Delicias Bakery & Rest., Inc.*, No. 6:12–cv–150– Orl– 36KRS, 2012 WL 2191299 (M.D. Fla. May 31, 2012), report and recommendation adopted 2012 WL 2191492 (M.D. Fla. Jun.14, 2012) (approving settlement where Case 6:13-cv-01028-RBD-DAB general release by employee was exchanged for a mutual release by employer); *Rappaport v. Embarq Mgmt. Co.*, No. 6:07–cv–468–Orl–19DAB, 2008 WL 4642593, at *2 (M.D. Fla.

18

Oct.17, 2008) (approving settlement agreement where employee received separate monetary compensation in consideration for signing a general release)).

These foregoing cases, in which the courts found the FLSA settlement to be fair and reasonable, are directly applicable. Indeed, in *Claflin*, another Court within this District approved the settlement of an FLSA claim where the settlement agreement included a general release of claims other than the FLSA claims in the action. The Magistrate's report and recommendation, which this Court subsequently approved, reasoned that such release was appropriate because "both sides negotiated for and received releases which, considering the nature of the work performed, provided benefits to both parties" and because "separate monetary compensation was paid." *See Claflin*, 6:13-cv-01028-RBD-DAB (Dkt. 26) (M.D. Fla. Dec. 2, 2013) (report and recommendation of Magistrate David A. Baker).

In addition to approving settlement agreements where an employee received additional consideration in exchange for general releases, courts in the Middle District of Florida have approved numerous FLSA settlement agreements containing confidentiality provisions, particularly where those provisions are mutual. See e.g., Order Granting Motion for Settlement, *Stephenson v. SunTrust Bank*, No. 6:12-cv-01857-RBD-GJK (M.D. Fla. Sept. 16, 2013) (approving settlement pursuant to which the plaintiff agreed "not to discuss the terms and conditions of this Agreement with any person other than her attorney, spouse, or accountant, unless compelled otherwise by law" and agreed "to respond to any inquiries . . . "with 'the matter has been resolved'"); Order Granting in Part Motion for Settlement, *Torres v. Wftv, Inc.*, No. 6:13-cv-00795-RBD-DAB (M.D. Fla. July 23, 2013) (approving settlement containing a confidentiality clause providing that the Plaintiff "agrees to keep the terms and provisions of this Agreement confidential and not disclose its terms and provisions," and that Plaintiff agrees ""if

19

questioned about this settlement, the disposition of her FLSA claim, or any other information made confidential by this provision, she will only say: The case is over."); Order Granting Motion for Settlement, *Landfair v. Optimal Phone Interpreters, Inc.*, 6:12-cv-01747-RBD-DAB (M.D. Fla. July 11, 2013) (approving settlement agreement containing confidentiality clause under which the plaintiffs agreed "that they are to keep the fact of the settlement of this matter, the underlying facts and circumstances of any dispute they may have with the Defendants, and the terms of this Agreement confidential"); Order Granting Motion to Dismiss, *Bowman v. Cleveland Constr., Inc. of Nev.*, No. 6:12-cv-00555-RBD-DAB (M.D. Fla. Feb. 28, 2013) (approving settlement agreement containing a clause requiring "[e]ach party [to] keep confidential the terms and conditions of Claimant's employment, including but not limited to the terms and conditions of this Settlement Agreement"); Order Granting Motion for Settlement, *Marr v. Palm Beach Grading, Inc.*, No. 6:11-cv-00712-RBD-GJK (M.D. Fla. Jan. 23, 2013) (approving settlement pursuant to which the plaintiff agreed "[not to disclose the contents of this Agreement to anyone except his tax advisors, his attorneys, or as otherwise compelled by force of law"); Order Granting Motion to Approve Settlement, *Waczewski v. Tempus Resorts, Int'l*, No. 6:12-cv-00899-RBD-GJK (M.D. Fla. Jan. 17, 2013) (approving settlement where the plaintiff agreed "not [to] disclose the fact of this Settlement, Agreement, the terms of this Settlement Agreement, the facts and circumstances giving rise to this Settlement Agreement, or the existence of any claim that [the plaintiff] has, had, or may have had, that is subject to the release of claims contained in this Settlement Agreement"); Order Granting Motion to Approve Settlement, *Mian v. Kwik Trip Oil Co., Inc.*, No. 3:11-cv-00489-RBD-TEM (M.D. Fla. October 7, 2011) (approving settlement containing a provision in which the plaintiff "agree[d] and covenant[ed] to keep all matters confidential concerning this lawsuit and Agreement, including

the fact of settlement and that monies were paid, the terms and amount of settlement, and content of this Agreement, absolutely confidential forever, and not to discuss same with anyone except [his] spouse or tax or financial advisors"); Order Dismissing Case, *Rojas v. Grau*, No. 3:11-cv-00001-RBD-JBT (M.D. Fla. Sept. 6, 2011) (approving FLSA single plaintiff settlement, where employee agreed to "keep the terms of this settlement in strict confidence"); Order Granting Motion to Approve Settlement, *Walworth v. Stuckey*, No. 3:11-cv-00490-RBD-JBT (M.D. Fla. Aug. 2, 2011) (approving settlement agreement containing a provision stating that the employee would keep confidential, inter alia, "the existence and terms of this Agreement").

Here, where a non-disparagement agreement and confidentiality provision are particularly important to Plaintiffs because they either currently continue to work in the same industry or anticipate they might seek to in the near future, these agreements have significant value.

### 7. No other person's rights will be affected by the approval of this settlement agreement

No other person, who has not elected to "opt in" to this action under 29 U.S.C. § 216(b), thus the Settlement and Full and Final Release of All Claims will not affect the rights of any person not a party hereto under the FLSA.

### CONCLUSION

For the reasons set forth above, the parties respectfully request that this Court approve in its entirety the Full Settlement Agreement in this matter (attached hereto as Exhibit C), which was reached at arms-length and has been voluntarily executed by all parties.

Dated:  August 4, 2014

Respectfully submitted,

**/s/  Andrew R. Frisch**
Andrew R. Frisch

21

afrisch@forthepeople.com
Morgan & Morgan, P.A.
600 North Pine Island Road
Suite 400
Plantation, FL  33324
Phone No.:  954-318-0268
Fax No.: 954-333-3515

***Counsel for Plaintiffs***


**/s/  David E. Block**
David E. Block
david.block@jacksonlewis.com
Jackson Lewis P.C.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3500
Miami, Florida 33131
Phone No.: 305-577-7601
Fax No.: 305-373-4466

***Counsel for Defendant***