# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

---

KAREN PALMA, and HALLIE SELGERT,
on behalf of themselves
and those similarly situated,

       Plaintiffs,

v.                            Case No.: 8:13-cv-00698-VMC-MAP
                                    Jury Demanded

METROPCS WIRELESS, INC.,

       Defendant.

---

**DECLARATION OF ANDREW FRISCH IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**

---

I, Andrew R. Frisch, declare under 28 U.S.C. § 1746 as follows:

      1.     My name is ANDREW FRISCH.  I am over the age of eighteen (18) and competent to testify as to the matters stated herein.

      2.     I am a partner at Morgan & Morgan, P.A. ("M&M") in Plantation, Florida, in charge of the firm's nationwide class/collective action employment practice.

      3.     M&M is a national firm, with over 200 attorneys, that represents plaintiffs in a wide variety of employment matters including individual and collective/class action litigation involving wage and hour, discrimination, and harassment claims.

      4.     As an attorney for M&M, I am responsible for prosecuting, as lead counsel, federal and state labor and employment claims, including claims arising under Title VII, the Americans with Disabilities Act (ADA), the Age Discrimination in

1

Employment Act (ADEA), the Florida Civil Rights Act, the Fair Labor Standards Act ("FLSA"), and various parallel state and local municipal wage and hour laws, among others.

5.      M&M is the largest Plaintiff-side law firm in the United States.

6.      I am lead counsel in the matter of *Palma, et al. v. MetroPCS Wireless, Inc.,* 8:13-cv-00698-VMC-MAP.  As lead counsel, I was the primary attorney responsible for the litigation on behalf of Karen Palma, Hallie Selgert, and the settlement class certified by this Court.  Prior to this case, neither I nor my firm had any relationship with the Plaintiffs.

7.      We undertook this representation on a purely contingent basis.  Moreover, in light of the finite nature of our law firm's resources, our acceptance of this case precluded me/us from accepting other cases.  Neither my firm, nor myself have any received compensation for the services we have rendered in this case to date, from any source.

## Counsel's Background and Experience

8.      I completed my undergraduate studies at the University of Michigan (Ann Arbor), where I obtained a Bachelor of Arts (1997), and served as an assistant to the Honorable Lynn Rivers, then the Congressperson from Ann Arbor in the United States House of Representatives.  After my graduation from the University of Michigan, I attended law school at the Benjamin N. Cardozo School of Law in New York, where I graduated in the top of my class and earned a Juris Doctor degree (2000).  While in law

school, I served as a student law clerk for the Honorable Denis R. Hurley of the Eastern District of New York, and received numerous scholastic honors.

9.      I was admitted to the bars of the State of New York and New Jersey in 2001, the bar of the State of Florida in 2006, and the bar of the State of Georgia in 2012. Additionally, I am admitted to the bars of the Third, Sixth, and Eleventh Circuit Court of Appeals and Middle, Northern and Southern Districts of Florida, Eastern, Northern, and Southern Districts of New York, District of New Jersey, Court of Federal Claims, Northern and Southern Districts of Texas, District of Colorado, Eastern and Western Districts of Tennessee, Middle and Northern Districts of Georgia, and Eastern District of Michigan. I am a member in good standing of each of these bars.

10.     I have been practicing law since January 2001, have successfully handled hundreds of FLSA collective action cases (in multiple states and venues), and prior to coming to Morgan & Morgan, P.A., I managed the Wage and Hour Department at Rosenthal & Levy, P.A. in West Palm Beach, Florida for over a year.

11.     I have served or am serving as lead counsel in Wage and Hour Class/Collective Actions in the Middle, Northern and Southern District of Florida, Southern District of Texas, Eastern and Southern Districts of New York, District of New Jersey, Eastern District of North Carolina, Southern and Northern Districts of Mississippi, Eastern, Middle and Western Districts of Tennessee, Southern District of Ohio, Northern and Middle Districts of Georgia, District of Colorado, District of Oregon, and the Court of Federal Claims. *See, e.g., Bath v. Red Vision Systems, Inc.*, 2014 WL 2436100 (D.N.J. May 29, 2014); *Thompson v. Direct General Consumer Products, Inc.*, 2014 WL 884494 (M.D. Tenn. March 5, 2014)(nationwide

class of insurance agents); *Palma v. MetroPCS Wireless, Inc.*, 2013 WL 6597079 (M.D. Fla. Dec. 16, 2013)(nationwide class of account service representatives); *White v. NTC Transp., Inc.*, 2013 WL 5874566 (N.D. Miss. Oct. 31, 2013); *Cooper v. East Coast Assemblers, Inc.*, 2013 WL 308880 (S.D. Fla. Jan. 25, 2013)(certifying nationwide class of "assemblers" regarding unpaid overtime claims); *Young v. Dollar Tree Stores, Inc.*, 1:11-cv-01840-REB-MJW, D.E. 264 (D. Colo. Aug. 24, 2012)(conditionally certifying a nationwide class of over 35,000 "assistant store managers" pursuing off-the-clock claims); *Hardesty v. Litton's Market and Restaurant, Inc.*, 2012 WL 6046743 (E.D. Tenn. Sept. 28, 2012)(class of tipped servers alleging tip credit violations); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, (E.D.N.Y. April 20, 2012); *Elliott v. Amspec Services, LLC*, 2011 WL 6002019 (D.N.J. Nov. 29, 2011)(certifying nationwide class of "oil, gas and chemical inspectors"); *Mainor v. Lazer Spot, Inc.,* 2011 U.S. Dist. LEXIS 151990, at *8 (N.D. Ga. Aug. 9, 2011)(nationwide class of yard jockeys); *Dacar v. Saybolt, LP*, 4:11-cv-00433, D.E. 135 (S.D. Tex. June 2, 2011); *Aponte v. Comprehensive Health Management, Inc.*, 2011 WL 2207586 (S.D.N.Y. June 2, 2011); *Alvarez v. Gold Belt, LLC*, 2011 WL 1337457 (D.N.J. Apr. 7, 2011); *Mills v. RM International, Inc.*, 3:11-cv-00129, D.E. 38 (D. Or. March 31, 2011)(conditionally certifying nationwide class of "test drivers"); *Reyes v. AT & T Corp.*, 2011 WL 3517004 (S.D. Fla. Feb. 28, 2011)(conditionally certifying a nationwide class of "retail account executives"); *Brantley v. Inspectorate America Corp.,* 4:09-cv-02439, D.E. 43 (S.D. Tex. April 14, 2010); *Gayle v. United States,* 85 Fed. Cl. 72 (2008).

12.     Additionally, I have repeatedly been held to be adequate class counsel in claims arising under various state's wage and hour laws. *See Reyes v. AT&T Mobility Services, LLC,* 1:10-cv-20837-MGC, D.E. 191 (S.D. Fla. Dec. 20, 2012)(appointing Frisch as class counsel); *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. August 6, 2012)("Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law."); *Aponte v. Comprehensive Health Management, Inc.*, 2011 WL 2207586, at *12 (S.D.N.Y. June 2, 2011)(finding that Frisch and Morgan & Morgan "are qualified, experienced, and capable of acting as lead counsel" in wage and hour class actions).

13.     I have also tried close to two dozen jury trials in the state and federal courts of Florida and New York, as well as over one hundred final administrative hearings in multiple states and forums.

14.     Additionally, I have handled numerous cases as appellate counsel in administrative proceedings, as well as in state and federal court proceedings.

15.     I am a member of the National Employment Lawyers Association ("NELA"), as well as NELA's Florida and Georgia chapters. I am also an active member of various trial lawyer organizations, including the Florida Justice Association ("FJA"), the Palm Beach County Justice Association ("PBCJA"), the Broward County Justice Association ("BCJA") and the New York State Trial Lawyers Association ("NYSTLA").

16.     Further, I have published multiple articles on Wage and Hour subjects in different periodicals. I am also author/publisher of the "Overtime Law Blog" website

http://flsaovertimelaw.com, a frequently updated site pertaining to recent developments in FLSA and Wage and Hour jurisprudence.

17.     Given my expertise in wage and hour law, I am frequently asked to present to groups of attorneys and/or paralegals at speaking engagements. *See, e.g.*, Lecturer, "Overtime and Fair Labor Standards Act," Palm Beach County Chapter of Paralegal Association of Florida, Inc., May 9, 2007; also Lecturer, "Title VII of the Civil Rights Act of 1964; Age Discrimination in Employment Act (ADEA); Older Workers Benefits Protection Act (OWBPA); Florida Whistleblowers Act," Florida Workers' Advocates, FWA's 17th Annual Education Conference, June 9, 2007; Lecturer, "Best Strategies for Handling Fair Labor Standards Act (FLSA) Litigation by the Plaintiff and Defendant," Florida Bar Labor and Employment Section, Advanced Labor Topics 2012, April 14, 2012; Lecturer, "Calculating Damages Under the FLSA to Maximize Your Claims," Practice Made Perfect's Wage & Hour Seminar, February 7, 2013.

### Procedural History

18.     On March 18, 2013, Plaintiffs, Karen Palma and Hallie Selgert, filed a nationwide collective action and New York Rule 23 Class Action lawsuit, against Defendant, MetroPCS Wireless, Inc. ("MetroPCS"), on behalf of Account Service Representatives (collectively "ASRs"), who worked for MetroPCS nationwide and in New York respectively. *See* D.E. 1.

19. The Complaint asserted collective action claims under the Fair Labor Standards Act ("FLSA") and sought recovery of, among other things, unpaid overtime wages, liquidated damages, and attorneys' fees and costs. *See id.*

20. On April 29, 2013, MetroPCS filed its Answer and Affirmative Defenses to Plaintiff's Complaint. *See* D.E. 21.

21. On May 14, 2013, Plaintiffs, Karen Palma and Hallie Selgert, filed their First Amended Complaint. *See* D.E. 31.

22. On May 24, 2013, Plaintiffs filed their Expedited Motion to Conditionally Certified Collective Action and Facilitate Notice to Potential Class Members. *See* D.E. 33.

23. On May 30, 2013, Defendant, filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint. *See* D.E. 40. Significantly, in its Answer, Defendant asserted (and continues to assert to date) that Plaintiffs and all of its ASRs are properly deemed exempt pursuant to the FLSA's administrative exemption and/or outside sales exemption. *See id.*

24. After several rounds of briefing, this Court entered an Order in which it granted Plaintiffs' Expedited Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members on December 16, 2013. *See* D.E. 125.

25. Thereafter, the parties briefed their respective positions with regard to the content and procedures under which the notices should issue to putative class members [*see* D.E.s 128, 129, 130], and the Court entered its rulings regarding the parties' respective arguments on January 22, 2014. *See* D.E. 132.

26. Pursuant to Court-approved notice, notice was sent out to approximately 392 individuals who worked in Covered Positions during the Covered Period, and thus given an opportunity to join the Litigation under the terms of 29 U.S.C. § 216(b).

27. Pursuant to the Court's Order, Plaintiffs' counsel disseminated notice and at the conclusion of the notice period, 69 current and former ASRs opted in to the case. *See* Docket, generally.

### Pre-Mediation/Settlement Discovery

28. The parties engaged in very extensive discovery before agreeing to resolve this case.

29. As the Court is aware, this case has been pending for almost a year and a half.

30. To that end, the parties completed full discovery in this case and the discovery cut-off has passed.

31. During discovery Defendant produced tens of thousands of pages of documents in response to Plaintiffs' document requests, including corporate policies, training materials, work schedules, payroll records, personnel files, production reports, emails, and memoranda, as well responses to Requests for Admissions and Interrogatories.

32. Similarly, Plaintiffs also responded to interrogatories and document requests for multiple Plaintiffs, opt-ins and class members. In addition, Plaintiffs' counsel interviewed dozens of opt-in Plaintiffs and class members regarding their duties, pay structure (and amounts), and hours worked.

33. Additionally, Defendant deposed a total of eight (8) of the initial opt-in Plaintiffs, who worked for Defendants in Florida, California and New York. Similarly, Plaintiffs deposed two (2) separate corporate representatives produced by Defendant on a variety of designated topics.

34. Further, Plaintiffs interviewed numerous former supervisory employees with knowledge of Plaintiffs' duties and hours worked, in preparation for dispositive motions, and ultimately for trial.

35. While Plaintiffs remained confident in their position following discovery, Defendant raised several strong defenses, either of which could have resulted in dismissal of Plaintiffs claims in whole or in part, in the event of decertification.

### Dispositive Motions and Defendants' Motion to Decertify.

36. At the conclusion of discovery in the case, the parties cross-moved for summary judgment, with each party claiming that they were entitled to judgment as a matter of law on the issue of whether Plaintiffs were properly deemed exempt under the FLSA. *See* D.E.s 238 and 246.

37. Additionally, Defendant filed a Motion for Decertification. *See* D.E. 239.

### Settlement Negotiations and Mediations.

38. With the parties' respective motions for summary judgment and Defendants' Motion for Decertification pending, the Parties participated in an all-day mediation on May 28, 2014, with the assistance of Mediator Jay M. Cohen in Orlando, Florida.

39. Mr. Cohen is one of the most knowledgeable and skilled wage and hour class action mediators in the country.

40. In setting the parameters for the mediation, the parties agreed that they would attempt to negotiate in good faith the resolution of Plaintiffs' FLSA collective action claims, as well as Plaintiffs' NYLL and CAC claims.

41. To that end, Defendant provided Plaintiffs' counsel with additional

information about the facts underlying the claims made in the Litigation, as well as detailed information pertaining to the relevant pay history of all of the Plaintiffs and all sixty-seven (67) opt-in Plaintiffs. As a result, Plaintiffs were able to perform detailed calculations, based on the number of hours Plaintiffs claimed they worked, as well as the number of hours Defendant claimed Plaintiffs worked, as well as virtually every possible amount in between.

42. Although the mediation did not result in settlement of the claims, the Parties continued to pursue intense settlement negotiations in the days and weeks that followed.

43. Ultimately, after several weeks of additional negotiation, the Parties reached a settlement in principle regarding Plaintiffs claims on June 19, 2014, and filed a Joint Notice of Settlement with the Court reflecting same. *See* D.E. 255.

44. After additional negotiation, the Parties reduced their agreement to a formal Settlement Agreement, which they previously presented to the Court for its approval.

45. However, the Court elected not to exercise supplemental jurisdiction over Plaintiffs' New York and California class action claims, and as such, it requested that the Parties resubmit a Motion that addressed solely the fairness of the Parties FLSA Settlement, and any attorneys' fees to be awarded thereunder.

## Terms of Settlement

46. Pursuant to the settlement agreement, attached hereto as **EXHIBIT 1**, Defendant has agreed to pay a total of $550,000.00 to resolve Plaintiffs' FLSA claims.

47. The settlement represents a substantial percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims and survived an

appeal. On average, each FLSA class member will recover approximately $7,971.01, before attorneys' fees, costs, and administration fees are deducted ($5,314.00 net of these amounts).

48. The net settlement recovery of each Plaintiff and opt-in Plaintiff equates with a recovery based upon perfect liability and over 5 hours per week of overtime worked for every week, for every class member.

49. In light of the fact that most Plaintiffs estimated that they worked between 1 and 10 overtime hours per week, and the fact that liability in this case was far from clear, this can be said to be an exceptional result achieved for the Plaintiffs.

50. Under the terms of the settlement, each Plaintiff's recovery will be allocated half toward unpaid wages and half towards liquidated damages.

51. Defendant will pay the employer-side taxes that arise from the settlement payments in addition to those amount payable to each Plaintiff under the settlement.

52. In addition to these amounts, Plaintiff, Hallie Selgert ($5,000)—who served as lead Plaintiff and was invaluable to class counsel's efforts prosecuting the case—and opt-in Plaintiff, Hector Casta ($1,000), who fully participated in discovery and who appeared at deposition will petition the Court for participation awards.

### Claims Administration

53. The parties have retained Simpluris, Inc., a wage and hour claims administrator, to administer the settlement.

### Attorney's Fees

54. As part of the Settlement Agreement, Defendant has agreed to pay

Plaintiffs' attorney fees, in the amount of $183,333.33.

55. Under the Parties' settlement, Plaintiffs' attorneys' fees were calculated as a portion of the common fund established on behalf of the FLSA class.

56. However, if the Court were to calculate Plaintiffs' reasonable fees based on a lodestar, Plaintiffs' attorneys fees are inarguably appropriate.

57. As indicated by the Fee Ledger, attached as **EXHIBIT 2**, Plaintiffs counsel and his staff have expended over 1,000 hours litigating this case to the successful result reached.

58. Although my reasonable hourly rate has been approved at a rate of between $325 and $475, even calculating a lodestar based on the lower end of the spectrum, my lodestar would be approximately $325,000.00, based on the number of hours of work on the case.[1]

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 4th day of August, 2014
Plantation, Florida

/s/ **ANDREW FRISCH**
Andrew Frisch, Esq.
FL Bar No.: 27777

---

[1] Based on my qualifications and experience, my reasonable hourly rate has most recently been determined to be between $325.00 and $350.00 per hour, in the Middle and Southern Districts of Florida. *See Ortiz v. NAC Dynamics, LLC, et al.,* 8:12-cv-01998-MSS-TBM, D.E. 54 (M.D. Fla. March 24, 2014)( finding $325 per hour to be Andrew Frisch's reasonable hourly rate in an FLSA case); *Andrike v. Maple Way Community, Inc., et al.,* 8:11-cv-1939-T-24-AEP, D.E. 54 (M.D. Fla. May 3, 2013)(finding $325 per hour to be Andrew Frisch's reasonable hourly rate in an FLSA case); *Panico v. YGSL Holdings LLC, et al.,* 12-61269-CIV-COHN/SELTZER, D.E. 56 (S.D. Fla. April 5, 2013)(finding $350 per hour to be reasonable hourly rate for Andrew Frisch in an FLSA case).

Morgan & Morgan, P.A.
600 N. Pine Island Road, Suite 400
Plantation, FL 33324
Telephone:     (954) 318-0268
Facsimile:     (954) 333-3515
Email: afrisch@forthepeople.com

*Attorney for Plaintiffs*

# EXHIBIT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAREN PALMA, HALLIE SELGERT, and
YVONNE PACHECO, on behalf of themselves
and those similarly situated,

       Plaintiffs,

v.                             Case No.: 8:13-cv-00698-VMC-MAP

METROPCS WIRELESS, INC.,

       Defendant.

## JOINT STIPULATION OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND GENERAL RELEASE

This Joint Stipulation of Class and Collective Action Settlement and General Release ("Settlement") is entered into by and between Plaintiffs, the classes of individuals that they seek to represent and Defendant (each, as hereinafter defined) (together, "the Parties").

### RECITALS

1. On March 18, 2013, Plaintiffs Karen Palma ("Palma") and Hallie Selgert ("Selgert") filed a civil lawsuit entitled *Karen Palma, et al. v. MetroPCS Wireless, Inc.*, Civil Action No. 8:13-cv-698-VMC-MAP, currently pending in the United States District Court, Middle District of Florida (the "Litigation"). The Litigation was brought by Palma and Selgert in their individual capacities under the Fair Labor Standards Act ("FLSA") and as a purported collective action of all other persons similarly situated under the FLSA. It was also brought by Palma and Selgert as the purported representatives of a proposed class of MetroPCS employees and former employees who worked in New York under Rule 23 of the Federal Rules of Civil Procedure, but Plaintiffs voluntarily dismissed the Rule 23 New York claims during the Litigation.

2. Under the FLSA, to participate in the case, an eligible individual must "opt in," that is, he or she must file a written "consent" with the court to join the case as a "party-plaintiff"; otherwise, he or she cannot participate in the case and will not be bound by

1

its results. Subsequent to the filing of the Complaint, on various dates between March 18, 2013, and April 28, 2014, Eduardo Villar, Hector Casta, Linda Prevalon, Lisa Hobday, Christopher Smith, Aixa Reynolds, Gerald Jusino, Yvonne Pacheco, Ann Bush, Jason A. Cole, Tiffiny Bardonner, Vanessa Robles, James S. Ratliff, Christine Luong, Alan T. Gojit, Maya Brooks, Rosemarie Carlucci, Fernando Pereria Filho, Stanley Menashes, Adalberto Borrego, Antonio Grouzis, Collin Anderson, Alexis Hollie, Don Seyegh, Ron Antar, Alan Ramirez, Peter J. Cooley, Elizabeth Mendoza, Scheril Murray-Powell, Jamie Nunez, Majid Vaghar, Whiteny Branigan, Salvatore Abbruzzese, Angela Malekian, Jessica Cipollini, Rene Ramirez, Alfredo Martin, David Leal, Kerrie Falconer, Rosa Corral, DeAnthony Quarles, Jennifer M. Torres, Luke Marvulli, Paloma Cameron, Phuong K. Leuv, Yvette S. Morales, Patrick Cheung, Nicholas Ormiston, Jennifer Wilson, Damian McAnuff, Esmeralda Reynoso, Irene Mesa, Wshana Moss, Michael Vinson, Scott Haselrig, Kara Rayke, Raji A. Silva, Baljit Dosanjh, Brian Butler, Devina Cantu, Denny R. Legendre, Nicole Torres, Lindsay Robson, Vikas Sharma, Nicole Anderson, Chad Lindholm and Lourdes Becker, ("FLSA Class Members") all filed individual "opt in" consents with the Court to join the Civil Action, thereby becoming party plaintiffs with respect to the claims brought under the FLSA. These are the only individuals who have opted into this case.

3.   The Court conditionally certified a collective action in this case and allowed notice to be sent to all putative FLSA class members. Notice was sent to all putative FLSA class members, who were given appropriate notice and opportunity to opt-in. Pursuant to Court-approved notice, notice was sent out to 402 individuals who worked in the Covered Position during the Covered Period, and thus were given an opportunity to join the Litigation under the terms of 29 U.S.C. § 216(b). 69 individuals have been deemed to have filed valid opt-in forms with the Court.

4.   The Parties engaged in substantial formal and informal discovery, including efforts made by Class Counsel in interviewing Plaintiffs and individuals who are FLSA Class Members and Rule 23 Class Members, propounding and responding to document requests, requests for admissions, and interrogatories, taking depositions, reviewing thousands of documents exchanged by the Parties, and analyzing time and payroll records.

5.   After the conclusion of over a year of discovery, and following the submission of motions for summary judgment by all parties, as well as a motion to decertify by Defendants, the Parties participated in an all-day mediation on May 28, 2014, with the assistance of Mediator Jay M. Cohen, Esq. in Orlando, Florida. In that mediation, the Parties had a productive dialogue regarding their respective positions. Although at mediation the Parties did not come to a resolution, all agreed to continue to pursue the dialogue on settlement, while at the same time proceeding forward with the Litigation.

6.   As a result of information obtained during discovery and additional investigation conducted by Class Counsel, individuals have been identified who worked in Covered Positions in the State of California and who are/will be asserting claims under California state law as well as individuals who worked in Covered Positions in the State of New York and who are/will be asserting claims under New York state law.

7.   Based on additional investigation conducted by Class Counsel, Class Counsel are prepared to and will file a separate Class Action Complaint ("Class Complaint"), a draft of which is attached hereto as Exhibit A, in the Supreme Court of New York, New York County, as provided by Section 2.2 of the Settlement, on behalf of Palma-- an individual who worked for Defendant in the Covered Position in the State of New York--and on behalf of Yvette Pachecho--an individual who worked for Defendant in the Covered Position in the State of California.

8.   The Class Complaint will assert class action claims under the California Labor Code ("CLC") and the New York Labor Law ("NYLL") for any and all wage and hour claims which could be made and will seek recovery of, among other things, unpaid overtime wages, liquidated damages, and attorneys' fees and costs, under both the CLC and NYLL.   The Class Complaint will name as Defendants the various subsidiary corporations of Defendants and for whom Defendants claim the FLSA Class Members worked.

9.   Defendant has denied and continue to deny all of the allegations made by Plaintiffs in the Litigation and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation..   Nonetheless, without admitting or conceding any fault, wrongdoing, liability or damages, Defendants have agreed to settle the Litigation and all claims asserted under the FLSA in the Litigation, as well as the allegations in the Class Complaint to be filed, on the terms and conditions set forth in the Settlement, subject to Court approval, to avoid the expense, risk and uncertainty of continued and protracted litigation.

10.   Class Counsel, based upon their analysis and their evaluation of a number of factors, recognize the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation and Class Complaint, if not settled now, might result in a recovery that is less favorable to the Plaintiffs, the FLSA Class Members and the Rule 23 Class Members, compared to the settlement terms reflected herein.   Class Counsel is satisfied that the terms and conditions of the Settlement are fair, reasonable and adequate and that the Settlement is in the best interests of Plaintiffs, the FLSA Class Members and the Rule 23 Class Members.

11.   The Settlement represents a compromise of highly disputed claims, both on the merits and as to whether a class or collective action is appropriate.   Nothing in this Settlement is intended or will be construed as an admission by Defendants that Plaintiffs' claims have merit or that class or collective action certification is

3

appropriate with respect to any of the claims asserted in the Litigation and Class Complaint.

12. It is the Parties' intention that the Settlement shall constitute a full and complete settlement and release of all claims against Defendant that was alleged in the Litigation, as well as claims included but not limited to all claims based on the facts underlying the claims alleged in the Class Complaint.

13. Those class members who sign individual Agreements and General Releases will be subject to the confidentiality provisions therein. However, a breach of the confidentiality provision of those Agreements and General Releases by one or more individual has no impact on any other class member other than the alleged breaching individual.

14. In consideration of the mutual covenants and promises set forth in the Settlement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions, subject to Court approval.

## 1.    DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1   **Claims Administrator.** "Claims Administrator" shall mean Simpluris, the neutral entity jointly selected by the Parties to provide notice to the Class, administer payment of the settlement to members of the FLSA Class and the Rule 23 Class and to complete the other tasks described in the Settlement.

1.2   **Claim Form.** "Claim Form" shall mean the form, in the form appended hereto as Exhibit B, to be submitted by Rule 23 Class Members who wish to participate in the Rule 23 Class settlement and thereby receive a proportional share of the settlement.

1.3   **Class.** "Class" shall mean, in context, member of either the FLSA Class, and/or the Rule 23 Class, a term meant to encompass classes pursuant to Article 9 of the New York Civil Practice Law Rules ("CPLR") and the Section 382 of the California Code of Civil Procedure.

1.4   **Class Counsel.** "Class Counsel" shall mean Morgan & Morgan, P.A. For purposes of providing any notices required under the Settlement, Class Counsel shall mean Andrew Frisch, Esq. of Morgan & Morgan, P.A.

1.5   **Court.** "Court" shall mean the United States District Court for the Middle District of Florida, the Honorable Virginia M. Hernandez Covington presiding, as well as any other court in which subsequent cases are filed for the purpose of seeking approval of the non-FLSA portions of this agreement.

4

1.6    **Covered Period.** "Covered Period" with respect to the Rule 23 California Class shall mean the period from May 28, 2010, through the date on which the Court grants Preliminary Approval of the settlement terms reflected in this Settlement. "Covered Period" with respect to the Rule 23 New York Class shall mean the period from May 28, 2008, through the date on which the Court grants Preliminary Approval of the settlement terms reflected in this Settlement.

1.7    **Covered Position.** "Covered Position" shall mean the Account Service Representative position maintained by Defendant.

1.8    **Defendant and Defendants.** "Defendant" shall mean MetroPCS Wireless, Inc. and Defendants shall mean MetroPCS Wireless, Inc. and any subsidiaries or related entities identified in the caption of the Class Complaint(s).

1.9    **Defendants' Counsel.** "Defendants' Counsel" shall mean Jackson Lewis, P.C. For purposes of providing any notices required under the Settlement, Class Counsel shall mean David E. Block, Esq. of Jackson Lewis, P.C.

1.10   **Dual Class Members.** "Dual Class Member" shall mean an FLSA Class Member who is also either a California Class Member or a New York Class Member, i.e., an individual who opted into the Litigation and who worked in the Covered Position in the States of California or New York during the respective Covered Period applicable to the California or New York Class. There are no Class members who are members of all three Classes.

1.11   **Effective Date.** "Effective Date" as it pertains to the Litigation is the date on which the Settlement becomes effective, which shall mean the later of: (1) thirty (30) days following the Court's Order Granting Final Approval of the settlement if no appeal is taken of the final approval order, or (2) the Court's entry of a final order and judgment after resolving any appeals. To the extent, any portion of this agreement is approved, but not the remainder, the Effective Date of the only portion of the agreement approved by such court shall be deemed to have passed.

"Effective Date" for the the New York and California Rule 23 Class portions shall mean the later of: (1) thirty (30) days following the Court's Order Granting Final Approval of the settlement if no appeal is taken of the final approval order, or (2) the Court's entry of a final order and judgment after resolving any appeals. To the extent, any portion of this agreement is approved, but not the remainder, the Effective Date of the only portion of the agreement approved by such court shall be deemed to have passed.

1.12   **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

5

1.13 **FLSA Class; FLSA Class Member.** "FLSA Class" shall mean one of the 69 individuals who opted into this Litigation as identified in Paragraph 2 of the recitals herein, and thus a participant in the collective action conditionally certified by the Court. A member of the FLSA Class is an "FLSA Class Member."

1.14 **Limitations Period.** "Limitations Period" with respect to an FLSA Class Member shall mean the period that starts on the date that is 3 years prior to the individual's opt-in date, and ends on December 31, 2013, the date on which Defendants reclassified their Account Service Representative position as non-exempt under the FLSA.

1.15 **Litigation.** "Litigation" shall mean *Palma et al. v. MetroPCS Wireless, Inc.*, Case No. 8:13-cv-698-VMC-MAP, pending in the United States District Court for the Middle District of Florida.

1.16 **Maximum Settlement Amount.** "Maximum Settlement Amount" shall mean the maximum amount that Defendants can be obligated to pay in connection with this Settlement, which is no more than $2,400,000, inclusive of all damages, fees, costs, and any and all other sums awardable in the Litigation.

1.17 **Net Settlement Fund.** "Net Settlement Fund" shall mean the remainder of the Maximum Settlement Payment after deductions for Court-approved attorneys' fees and costs as described in Section 3.3, Court approved service awards to Plaintiffs as described in Section 3.4, and settlement administration fees and costs, as described in Section 2.1.

1.18 **Notice.** "Notice" shall mean the Notices of Settlement of the Class/Collective Action Lawsuit and Fairness Hearing in the forms appended hereto as Exhibit C, D, E, and F, which shall be used to provide notice, respectively, to FLSA Class Members, Rule 23 Class Members and Dual Class Members.

1.19 **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

1.20 **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of the Settlement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.21 **Parties.** "Parties" shall mean Plaintiffs, the classes of individuals that they seek to represent and Defendants, including all Defendants named in the Class Complaint.

1.22 **Plaintiffs.** "Plaintiffs" shall mean Karen Palma, Hallie Selgert, and Yvette Pachecho and any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.23   **Qualified Class Member.**  "Qualified Class Member" shall mean Rule 23 Class Members who file timely Claim Forms and who do not opt out of the Rule 23 Class settlement pursuant to Section 2.5 of the Settlement. Dual Class Members shall be deemed to be Qualified Class Members without having to submit any Claim Form, provided they do not opt out of the Rule 23 Class settlement. A Dual Class Member who opts out of the Rule 23 Class will not be a Qualified Class Member, but will still be an FLSA Class Member.

1.24   **Released Claims.**  "Released Claims" shall mean any and all claims released by Plaintiffs, the FLSA Class Members and the Rule 23 Class Members as provided in Section 3.9 of the Settlement.

1.25   **Releasees.**  "Releasees" shall mean MetroPCS Wireless, Inc., its parent corporation, affiliates, subsidiaries, divisions, other related entities, predecessors, successors and assigns, and its current and former employees, attorneys, officers, directors, owners, shareholders, investors, agents, fiduciaries, their successors, assigns, and representatives, both individually and/or in their business capacities, including T-Mobile USA, Inc., its parent corporation, affiliates, subsidiaries, divisions, other related entities, predecessors, successors and assigns, and its current and former employees, attorneys, officers, directors, owners, shareholders, investors, agents, fiduciaries, their successors, assigns, and representatives, both individually and/or in their business capacities, (collectively "Releasees").  Notwithstanding the foregoing definition, excluded from the definition of "Releasees" herein are third party dealers with MetroPCS,  with the exception of those who directly employ or jointly employ or employed ASRs in the Covered Position during the Covered Periods herein.

1.26   **Rule 23 California Class; Rule 23 California Class Member.**  "Rule 23 California Class" shall mean all individuals who, during a portion of the Covered Period applicable to the Rule 23 California Class, are or were employed in the State of California in one of the Covered Positions.  A member of the Rule 23 California Class is a "Rule 23 California Class Member."

1.27   **Rule 23 Class; Rule 23 Class Member.**  "Rule 23 Class" shall mean all Rule 23 California Class Members and all Rule 23 New York Class Members.  A member of the Rule 23 Class is a "Rule 23 Class Member."  Rule 23 Class, as used heretin, shall encompass classes pursuant to Article 9 of the New York Civil Practice Law Rules ("CPLR") and the Section 382 of the California Code of Civil Procedure

1.28   **Rule 23 New York Class; Rule 23 New York Class Member.**  "Rule 23 New York Class" shall mean all individuals who, during a portion of the Covered Period applicable to the Rule 23 New York Class, are or were employed in the State of New York in one of the Covered Positions.  A member of the Rule 23 New York Class is a "Rule 23 New York Class Member."

1.30    **Service Payment Plaintiffs.** "Service Payment Plaintiffs" are Karen Palma, Hallie Selgert, Hector Casta, Linda Prevalon, Lisa Hobday, Gerald Jusino, Ann Bush, and Yvonne Pacheco.

1.31    **Settlement.** "Settlement" shall mean the Joint Stipulation of Class and Collective Action Settlement and General Release.

## 2.    APPROVAL AND CLASS NOTICE

2.1     **Retention of Claims Administrator.**  Within five calendar days after the Order Granting Preliminary Approval, the Parties shall retain Simpluris to serve as the Claims Administrator to administer the settlement process.   The Claims Administrator shall be responsible for mailing Notice to the Class and the Claim Forms, determining eligibility, calculating the FLSA Class Members' and Qualified Class Members' shares of the Net Settlement Fund (pursuant to the formulas and procedures outlined in Section 3.13 herein), and preparing and mailing settlement payment checks to FLSA Class Members and Qualified Class Members as provided herein.   The Claims Administrator shall also be responsible for completing and remitting all required taxes and tax reporting forms, and for completing the other administrative duties described herein.   The Parties agree to cooperate with the Claims Administrator and assist it in any way possible in administering the Settlement.   The Claims Administrator's fees shall be paid from the Maximum Settlement Payment, in an amount not to exceed $15,000.  To the extent the Claims Administrator's fees exceed $15,000; such overages shall be deducted from the portion of the Maximum Settlement Amount allocable to Class Counsel's attorneys' fees and costs.

2.2     **Preliminary Approval by the Court.**   On or before August 31,2014, unless otherwise agreed, Plaintiffs will file the Class Complaint and within 30 days thereof, the parties will seek to file an Unopposed Motion for Preliminary Class Certification, and Approval of the Class Action Settlement ("Preliminary Approval Motion").  In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court, among other things: (a) a proposed Claim Form; (b) proposed Notice; and (c) a proposed Order Granting Preliminary Approval.  Defendants will draft the proposed Order Granting Preliminary Approval and will provide Plaintiffs with the opportunity to review and comment on it prior to it being filed.  The Parties will meet and confer in good faith to attempt to resolve any disputed items in these papers.   The Preliminary Approval Motion will seek the setting of dates for Rule 23 Class Members to opt-out and/or file objections, and for a Fairness Hearing.  Defendants will not oppose the Preliminary Approval Motion.

2.4     **Denial of Preliminary Approval.**

(A)     **Denial in Full.** If the Court denies the Preliminary Approval Motion in full, then the Parties agree jointly to seek reconsideration of the ruling or seek

8

Court approval of a renegotiated settlement, and/or re-file some or all of the claims in the Class Complaint in another forum if necessary, for the purpose of obtaining court approval for the remainder of the parties' agreement

(B)    **Partial Denial.**  If the Court partially denies the Preliminary Approval Motion by refusing to approve the settlement for either the FLSA Class or either the Rule 23 California Class or the Rule 23 New York Class, or both, the Parties will proceed to implement the terms of the Settlement with respect to that portion of the Class as to which preliminary approval has been given and to proceed via separate litigation with regard to the other claims.  In the event that the FLSA Class settlement is approved but not that of the Rule 23 California Class or the Rule 23 New York Class, or both, no Dual Class members shall be required to release their California or New York state law claims, as applicable, as part of the settlement of their FLSA claims.  In that event, Defendants will be entitled to an offset, in the full value of the payments made to settle the FLSA claims of the Dual Class Members, of any California or New York wage and hour state law overtime claims that may be pursued subsequently.

## 2.5   **Class Notice.**

(A)    No later than ten (10) business days after the date of the Order Granting Preliminary Approval, Defendant will provide the Claims Administrator with a list, in electronic form, of the (1) names, (2) last known addresses, and (3) dates of employment of each member of the Class.  In the event of partial approval, this information shall not be provided if Defendant exercises its right to declare the Settlement and settlement null and void.

(B)    Within fifteen business days of the Order Granting Preliminary Approval, the Claims Administrator shall mail the Notices and Claim Forms to all Rule 23 and Class Members (including Dual Class Members), via First Class United States mail, using each individual's last known address as recorded in Defendants' records and provided pursuant to Section 2.5(A).  The Claims Administrator shall take all reasonable steps to obtain the correct address of any member of the Class for whom the Notice is returned by the post office as undeliverable, and shall attempt re-mailings as described below.  Defendants' Counsel and Class Counsel have the right to make reasonable inquiries and receive information from the Claims Administrator related to the claims administration process.

(C)    In order to participate in the Rule 23 Class settlement, Rule 23 Class Members will be required to submit their request for a settlement payment to the Claims Administrator as provided in the Notice by timely returning the completed Claim Form, which shall contain a Release as set forth in Section 3.9.  Dual Class Members shall be deemed to have already submitted a claim in the Rule

9

23 Class and will not be required to submit a Claim Form. With the exception of Dual Class Members, to the extent Rule 23 Class Members do not return their Claim Forms within 45 calendar days after mailing of the Notice, settlement funds allocated for such claims shall revert to Defendants, unless such notice is returned as undelivered per Paragraph 2.5(E).

(D)     FLSA Class Members will not need to submit a Claim Form to claim a settlement fund payment, but will be required to sign a release of FLSA claims as a    condition of receiving payment.  FLSA Class Members will each receive a letter, explaining their allocation of the FLSA Settlement fund and the scope of the release of claims they are providing, by accepting their settlement proceeds.  The letter shall be mailed within fifteen business days of the Court's final approval of the FLSA settlement.  Any settlement funds allocated for FLSA Class Members who do not negotiate their settlement check within 120 days after mailing of the checks shall revert to Defendants.

(E)     If any Notices are returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt to re-mail such Notices within the next 10 business days.  The Claims Administrator shall, within 10 business days after any re-mailing of the Notice, notify Class Counsel and Defendants' Counsel of the precise date of the end of the 45-calendar day Rule 23 claim period, and the 90-calendar day FLSA response period described in Section 2.5(D). Subject to the deadlines contemplated by the previous sentence, to the extent the re-mailed Notices are returned to the Claims Administrator as undeliverable  the checks shall revert to Defendants and such individuals shall be deemed to have opted out.

## 2.6    Rule 23 Class Member Opt-Out.

(A)     Any Rule 23 Class Member including any Dual Class Member may request exclusion from the Rule 23 Class by "opting out."  Any such individual who chooses to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the Settlement ("Opt-Out Statement").  The Opt-Out Statement must contain the name and address of the individual to be valid.  It must also contain the words "I elect to exclude myself from the settlement in *Palma v. MetroPCS Wireless, Inc.*" in order to be valid.  To be effective, such Statement must be postmarked by a date certain to be specified in the Notice, which will be 45 calendar days after the Claims Administrator mails the Notice.  The 45-calendar day period will begin to run from the first mailing, except for those whose first mailing was returned to the Claims Administrator as undeliverable, in which case the 45-calendar day period for any such individual will begin to run from the date of the first successful mailing to such individual unless another period is set by the Court.  The end of the "Opt-Out Period" shall be 45 calendar days after the

last day on which the Claims Administrator makes a mailing, but no later than 14 calendar days before the date of the Fairness Hearing. The Claims Administrator shall, within 10 calendar days after the last day on which it makes such a mailing, notify Class Counsel and Defendants' Counsel of the precise date of the end of the Opt-Out Period.

(B)    The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendants' Counsel not later than 3 business days after receipt thereof. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and the originals of all envelopes accompanying Opt-Out Statements in its files until such time as Defendants provide the Claims administrator with written authorization to destroy them.(C)    Rule 23 Class Settlement funds allocated to Rule 23 Class Members and Dual Class    Members who opt out pursuant to this provision shall revert to Defendants. No portion of the FLSA Class Settlement funds shall revert to Defendants.

2.7    **Objections to Settlement.**

(A)    Rule 23 Class Members, including Dual Class Members, who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be 30 calendar days after the Claims Administrator mails the Notice. The statement must contain the name and address of the Class member to be valid. It also must contain the words "I object to the settlement in *Palma v. MetroPCS Wireless, Inc.*" and set forth the reasons for the objection. The Claims Administrator shall stamp the date received on the original objection and send copies of each objection to Class Counsel and Defendants' Counsel not later than 3 days after receipt thereof. The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of the Court within 3 business days after the end of the Opt-Out period.

(B)    An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any time. Any Rule 23 Class member who has filed an Opt-Out Statement may not also submit objections to the proposed settlement.

(C)    The Parties may file with the Court written responses to any objections no later than 7 business days before the Fairness Hearing.

11

2.8    **Motion for Judgment and Final Approval.** No later than fourteen calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

2.9    **Final Order and Judgment from the Court.** Plaintiffs will seek to obtain from the Court, as a condition of settlement, a Final Order and Judgment in a form to be agreed upon by the Parties. The proposed Final Order and Judgment will, among other things: (a) finally certify the Rule 23 Classes and/or the FLSA Collective Action Class for purposes of settlement; (b) enter Judgment in accordance with this Settlement; (c) approve the settlement as fair, adequate, reasonable, and binding on all Qualified Class Members, and on all FLSA Class Members; (d) dismiss the Litigation with prejudice; (e) enter an order permanently enjoining all Rule 23 Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by the Settlement; and (f) incorporate the terms of the Settlement. Defendants will not oppose the application for the Final Order and Judgment.

2.10   **Effect of Failure to Grant Final Approval.** In the event the Court does not enter Judgment in accordance with the Settlement, or such Judgment does not become Final as defined herein, the Parties agree to proceed as follows. In the event the Court refuses to approve the settlement in its entirety, the Parties jointly agree to (a) seek reconsideration of the decision denying entry of Judgment, or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration is denied, or a mutually-agreed-upon settlement is not approved:

(A)    The Litigation will proceed as if no settlement had been attempted, the Settlement shall be null and void and the Parties will be restored to their respective positions status quo ante. In that event, the Rule 23 Classes, if previously certified by the Court for purposes of settlement pursuant to the process set forth in the Settlement, shall be decertified, and Defendants shall retain the right to contest whether the California and New York state law claims alleged in the Second Amended Complaint should be maintained as a class action. In that event, Defendants also retain the right to contest the merits of all of the claims being asserted by Plaintiffs in the Litigation.

(B)    The Court will provide notice to Rule 23 Class Members that the Settlement did not receive final approval and that, as a result, no payments will be made to Rule 23 Class Members under the Settlement. Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the last address used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing. Class Counsel will provide appropriate notice to FLSA Class Members.

(C)    In the event the FLSA Class settlement is approved but the Rule 23 California Class and Rule 23 New York Class settlement is not approved, Dual Class

12

Members shall not be required to waive their California or New York state wage and hour claims to participate in the FLSA Class settlement. However, fifty (50%) percent of any gross amount paid to a Dual Class Member in connection with the FLSA Class settlement shall be offset by Defendants against any California or New York state wage and hour law overtime claim that may subsequently be brought by such Dual Class Member.

3.    **SETTLEMENT TERMS**

3.1   **Interim Stay of Proceedings.**  The Parties agree to refrain from taking any further steps to pursue their claims and/or defenses in the Litigation, except such proceedings necessary to implement and obtain an order granting final   approval of the terms of the Settlement, from the appropriate courts. The Parties further agree that the mutual, voluntary cessation of litigation shall terminate if the Motion(s) for Final Approval is denied by the Court.

3.2   **Settlement Payment.**

(A)    Defendants agree to pay a Maximum Settlement Payment of $2,400,000.00, which shall resolve and satisfy: (a) Court-approved attorneys' fees and costs ($800,000); (b) all amounts to be paid to the Class; (c) Court-approved service payments to Plaintiffs; (d) the Claims Administrator's fees; and (e) the expenses and fees of the mediator. Other than the employer's share of payroll taxes as described in Section 3.6(C), Defendants will not be required to pay more than $2,400,000.00 under the Settlement.

(1)    The Maximum Settlement Payment, shall be allocated to each of the classes in the gross amounts outlined herein as follows: (a) approximately 23% or $550,000.00 to the FLSA Class claims; (b) approximately 29.6% or $712,250.00 to the New York Rule 23 Class claims; and (c) approximately 47.4% or $1,137,750.00 to the California Rule 23 Class claims.

(2)    From the allocation to the FLSA Class described in ¶ 3.2(A)(1), *supra*, Plaintiffs' shall seek an award of $183,333.33 for their reasonable attorneys' fees attributable to the work performed to create the common fund regarding their FLSA claims, and a proportional amount of costs incurred pursuing the FLSA claims, settlement administration costs related to the FLSA claims and service fees (as set forth herein) to Selgert and Casta.

(3)    From the allocation to the  Rule 23 New York Class claims described in ¶ 3.2(A)(1), *supra*, Plaintiffs' shall seek an award of $237,416.66, for their reasonable attorneys' fees attributable to the work performed to create the common fund regarding the New York Rule 23 Class claims, and a proportional amount of costs incurred pursuing their New York Rule 23

13

claims, settlement administration costs related to the New York Rule 23 claims, and service fees (as set forth herein) to Palma, Prevalon and Hobday.

(4)    From the allocation to the Rule 23 California Class claims described in ¶ 3.2(A)(1), *supra*, Plaintiffs' shall seek an award of $379,250.00, for their reasonable attorneys' fees attributable to the work performed to create the common fund regarding theCalifornia Rule 23 Class claims, and a proportional amount of costs incurred pursuing their California Rule 23 claims, settlement administration costs related to the California Rule 23 claims, and service fees (as set forth herein) to Pachecho and Ann Bush. (B) Defendants will fund the settlement on the Effective Date of each portion of the settlement by remitting to the Claims Administrator, by wire transfer, the amount needed to pay valid claims, plus the other costs and expenses outlined in Section 3.2(A), in the total amount calculated by the Claims Administrator, which in no case shall exceed the Net Settlement Fund.

(C)    The Claims Administrator will hold the settlement payment made by Defendants, described in Section 3.2(B), in escrow. Within fourteen calendar days of receipt of the payment, the Claims Administrator will distribute the money held in escrow by making the following payments:

(1)    Paying Class Counsel's Court-approved attorneys' fees and costs as described in Section 3.3(A);

(2)    Paying the Claims Administrator;

(3)    Paying Court-approved service payments as described in Section 3.4 and the mediator's fee;

(4)    Paying Qualified Class members their portion of the Net Settlement Fund as described in Section 3.14; and

(5)    Paying FLSA Class members their portion of the Net Settlement Fund as described in Section 3.14.

### 3.3    Settlement Amounts Payable as Attorney's Fees and Costs.

(A)    Class Counsel shall petition the Court in the Litigation for no more than one-third of the Maximum Settlement Payment for the FLSA claims ($183,333) and shall petition the court or courts in the Class Claims for no more than one-third of the Maximum Settlemet Payment for those claims, which when combined with the fees for the FLSA claims shall not in the aggregate exceed as an award of attorneys' fees of $800,000. Class counsel shall also petition the Court in the Litigation and in the Class Claims for costs. Defendants will not oppose such applications.

14

(B)     The substance of Class Counsel's application for attorneys' fees and costs is not part of the Settlement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Settlement or otherwise affect the Court's ruling on the Motion for Final Order and Judgment. Any monies allocated to attorneys' fees and costs that are not approved by the Court become part of the Net Settlement Fund.

3.4   **Service Payments to Plaintiffs.**

(A)     Plaintiffs Karen Palma and Hallie Selgert will apply to the Court to receive $5,000 each; Plaintiff Yvonne Pachecho will apply to the Court to receive $3,000; and FLSA Class members Hector Casta, Linda Prevalon, Lisa Hobday, Gerald Jusino, and Ann Bush, will each apply to the Court to receive $1,000 each ("Service Payment Plaintiffs"). The service payment amounts will be deducted from the Net Settlement Fund, as described in ¶¶ 3.2(A)(1) through (4), prior to allocation of each Settlement Fund. As a condition of receiving the service payment, those listed above age 40 and over shall execute a general release in the form attached hereto as Exhibit H and those listed above under age 40 shall execute a general release in the form attached hereto as Exhibit I.

(B)     Defendant will not oppose such applications. The service awards and the requirements for obtaining such payments are separate and apart from, and in addition to, Plaintiffs' recovery from the Net Settlement Fund. The substance of the above-referenced Plaintiffs' application for service payments is not part of the Settlement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application(s) for service awards shall not terminate the Settlement or otherwise affect the Court's ruling on the Motion for Final Order and Judgment. Any monies allocated to service payments that are not approved by the Court become part of the Net Settlement Fund.

3.5   **No Effect on Other Benefits.** Neither individual payments from the Net Settlement Fund nor any other compensation provided to either Plaintiffs or members of the Class shall create any credit or otherwise affect the calculation of benefits provided under any benefit or compensation plan or program provided by Defendants (such as 401(k), pension, bonus, severance, or deferred compensation plans), and no payment made pursuant to the Settlement shall be deemed compensation for purposes of such plans/programs, require any contribution or award under such plans/programs, or otherwise require or modify coverage, contributions, or benefits under such plans/programs. Members of the Class shall be deemed to have waived all such

15

benefit or compensation plan or program claims, whether known or unknown by them, as part of their releases of claims under the Settlement.

3.6    **Taxability of Settlement Payments.**

(A)    For tax purposes, 50% of payments made to Qualified Class Members and to FLSA Class Members pursuant to Section 3.14 shall be treated as back wages and 50% of such payments shall be treated as liquidated damages and prejudgment interest.

(B)    Payments treated as back wages pursuant to Section 3.6(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages and interest pursuant to Section 3.6(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.3 shall be made without withholding. Class Counsel will provide the Claims Administrator a completed W-9 and receive a Form 1099 for this payment. Any service awards pursuant to Section 3.4 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)    Defendants shall be responsible for the cost of any payroll taxes ordinarily borne by the employer associated with wage payments, including but not limited to Defendants' share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.6(A). Such cost shall be borne independently of the Maximum Settlement Amount as defined in Paragraph 1.16 herein. These amounts shall be remitted to the Claims Administrator by the Defendants as part of the payment to be made pursuant to   Section   3.2(B).   The   Claims Administrator shall be responsible for remitting    any tax payment and tax reporting forms to the appropriate taxing authorities.    The    employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portion of the payments to Qualified Class Members shall not be Defendants' responsibility.

3.7    **Tax Liability.** Defendants counsel and Class Counsel make no representation to Plaintiffs or any of them individually as to the tax liability, if any, on the payments called for hereunder, and members of the Class are not relying on any statement or representation by Defendants, Defendants' counsel or Class Counsel in this regard. Members of the Class understand and agree that they will be solely responsible for the payment of any taxes and penalties which may be owed on the payments made to

16

them pursuant to the Settlement, with the exception of payroll taxes Defendants are required to pay. In the event that a court or agency of appropriate jurisdiction should find that any Releasor has a tax payment obligation in regard to any payments made pursuant to the Settlement, that individual Class member who received that payment agrees to be solely responsible for same.

3.8     **Circular 230 Disclaimer.** The Parties acknowledge and agree that: no provision of the Settlement, and no written communication or disclosure between or among the Parties or their counsel, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of the United States Treasury Department circular 230 (31 CFR part 10, as amended).

3.9     **Release of Defendants.**

(A)     **Release.** For and in consideration of the required acts and promises set forth in the text of this Settlement, each FLSA Class Member and Dual Class Member, as a condition to payment from the Settlement, agrees, among other things, by signing this Settlement, to release any unpaid wages, unpaid overtime claims and/or all other wage-and-hour claims arising during his or her employment with Defendants or Releasees, that have been brought in the Litigation.

(B)     **Effectuation of Release.** Each Rule 23 Class Member shall effectuate the Release by executing the Claim Form (including the Release set forth therein), in the form set forth as Exhibit B and as described in Section 2.5(C) of this Settlement. Each FLSA Class Member and Dual Class Member shall effectuate the Release by endorsing his or her settlement check, which shall be issued with the following language:

> By endorsing this check, I release Defendants and Releasees from all unpaid wages, unpaid overtime claims and/or all other wage-and-hour claims arising during my employment with Defendants or Releasees or that have been or could have been brought in the Litigation, **Palma, et al. v. MetroPCS Wireless, Inc., (or in the Class Claims, which may be captioned Pachecho, et al. v. MetroPCS Wireless, Inc. et al., as applicable)**, including but not limited to the unpaid overtime claims as alleged in the Litigation for the period employed by Defendants or Releasees, as well as all other known or unknown federal, state, or local wage and hour claims against Defendants or Releasees.

In addition to receiving a check with the aforementioned language, FLSA Class Members and Dual Class Members will receive the Notice described in Section 2.5(D) explaining that they are releasing such claims by virtue of accepting their settlement check.

17

(C)     **General Release.** In addition to the foregoing, the Plaintiffs and Class members receiving service payments pursuant to Section 3.4 must submit a timely and valid General Release (in the form attached hereto and incorporated herein as Exhibit G or H, as applicable).  Failure to timely submit a fully executed General Release shall be deemed a waiver of such person's right to a service payment from the Settlement, and any amount allocated to such service payment(s) shall revert to the Net Settlement Fund, for disbursement to FLSA and/or Rule 23 Class members on a pro-rata basis.

(D)     **Release of Fees and Costs for Settled Matters.**   Class Counsel and Plaintiffs, on behalf of the FLSA Class and the Rule 23 Class and each individual member of the Class, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with the Litigation or Class Counsel's representation of Plaintiffs and the FLSA Class and the Rule 23 Class, in connection with all claims resolved herein, upon final approval of the Court.

(E)     **No Assignment.**  Class Counsel and Plaintiffs, on behalf of the FLSA Class and the Rule 23 Class and each individual member of the Class, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person, firm, corporation, association, or entity whatsoever any released claim, any interest or claim in this Litigation, or any portion thereof.  Each individual Class member hereby agrees to indemnify and hold Defendants harmless against, without any limitation, any and all rights, claims, warranties, demands, debts, obligations, liabilities, costs, court costs, expenses including attorneys' fees, causes of action, or judgments based on or arising out of any such assignment or transfer, of their individual settlement allocation.

(F)     **Non-Admission of Liability.**  By entering into this Settlement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Settlement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Settlement of the Litigation, negotiation and execution of the Settlement, and all acts performed or documents executed pursuant to or in furtherance of the Settlement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations made in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative  or arbitral proceeding.  The Parties understand and agree that the Settlement is a

18

settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Settlement.

3.10   **Waiver of Settled California and New York Law Claims.**  With respect to the Released Claims, and in connection with the Release set forth in Section 3.9 and in the Claim Form, each FLSA Class Member and each Rule 23 Class Member, including each Dual Class Member, knowingly and voluntarily waives any and all rights or benefits that he or she may now have, or in the future may have, under the terms of Section 1542 of the California Civil Code or any similar New York or other law.  California Civil Code Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HER OR HIS MUST HAVE MATERIALLY AFFECTED HIS OR HIS SETTLEMENT WITH THE DEBTOR.

Plaintiffs and Rule 23 Class Members, including each Dual Class Members, may hereafter discover facts in addition to or different from those they now know or believes to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the final judgment described herein shall have fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

3.11   **Plaintiffs' Waiver of Right to Opt-Out and/or Object.**  Plaintiffs agree to sign the Settlement and by signing the Settlement acknowledge that they are thereby bound by the terms herein.  For good and valuable consideration, each of the Plaintiffs further agree that she will not file an Opt-out Statement or otherwise seek exclusion from the Rule 23 Class settlement.  Each of the Plaintiffs further agrees that she will not object to the proposed settlement.  Any effort to seek exclusion or object to the settlement shall be void and of no force or effect.

3.12   **No Solicitation of Opt-Outs or Settlement Objections.**  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Rule 23 Class Members, including Dual Class Members, to opt-out and/or to present written objections to the Settlement, or to appeal from the Court's final judgment.

3.13    **Calculation of Net Settlement Fund.**  As described in ¶¶ 3.2(A)(1) – (4), the Net Settlement Fund(s) shall be calculated by deducting, from the Maximum Settlement Payment approved by the Court, the following amounts: a) Court-approved attorneys' fees and costs; b) Court-approved Plaintiffs' service fees; and c) Claims Administrator fees.  The Net Settlement Fund shall be allocated among the Class in the percentages described in Section 3.2(A).  The Claims Administrator, within 5 calendar days of calculating the Net Settlement Fund(s), shall provide the calculations to Class Counsel and Defendants' counsel.  Class Counsel and Defendants' shall have 5 calendars days thereafter to provide objections to such calculations.  The Parties shall negotiate in good faith regarding any such objections.  If the Parties are unable to resolve such objections, this Settlement and settlement shall be null and void.

3.14    **Calculation of Payments to Dual Class Members.**   Settlement shares for Dual Class Members who do not opt out of the Rule 23 Class will be paid out of the portion of the Net Settlement Fund allocated to their respective Rule 23 Class, subject to an offset to such amounts equal to fifty (50%) percent to the gross amount they receive from the FLSA Settlement fund, calculated pursuant to Paragraph 3.15(C)(4).

3.15    **Distribution to the Class.**

(A)    Qualified Class Members and FLSA Class Members will be deemed eligible for an individual settlement payment from the Net Settlement Fund according to the terms of this Section 3.15.  Qualified Class Members and FLSA Class Members will release their claims as a condition of receiving their payments, as provided herein.

(B)    Notwithstanding the formulas below, no Qualified Class Member will be awarded a payment that is less than $100.00 (before taxes are deducted).  In the event that a Qualified Class Member's settlement share under the calculation set forth in Section 3.14(C) is less than $100.00, his or her settlement share will be increased to $100.00 and subtracted from the portion of the Net Settlement Fund allocated to the Rule 23 Class settlement and all other Qualified Class Members' settlement shares will be recalculated.

(C)    The amounts due to the FLSA Class members and the Qualified Class Members shall be calculated separately from one another using the applicable portion of the Net Settlement Fund, but using the same methodology.  For all Class members, an individual's proportionate share of the Net Settlement Fund, and his or her individual settlement payment, shall be determined by the Claims Administrator pursuant to the formula set forth below:

1)    Each Qualified Class Member shall be eligible to receive a dollar certain amount, to be determined by the Claims Administrator, for each workweek he or she worked at least 40 hours in the Covered Position in California or New York during the Covered Period.

20

(2)     Each FLSA Class Member shall be eligible to receive a dollar certain amount, to be determined by the Claims Administrator, for each workweek he or she worked at least 40 hours in the Covered Position during the Limitations Period.

(3)     To calculate the proportionate share of the Net Settlement Fund and individual settlement payment to be made available to the Class under Sections 3.15(C)(1) and (2):

        (a)     Add all workweeks worked by Qualified Class Members in the Covered Period to obtain the "Total Denominator" for the Rule 23 Fund, and add all workweeks worked at least 40 hours by FLSA Class Members in the Limitations Period to obtain the "Total Denominator" for the FLSA Fund.

        (b)     Divide the number of workweeks worked at least 40 hours by each Qualified Class Member or FLSA Class Member in the Covered Period or the Limitations Period, as applicable, by the Total Denominator for the respective fund to obtain each individual's "Proportionate Share of the Net Settlement Fund."

        (c)     Multiply each individual's Proportionate Share of the Net Settlement Fund allocable to the applicable Class claims to determine each individual's settlement payment.

(4)     To the extent on or more Dual Class Members elects his or her Rule 23 share, his or her FLSA allocation shall be redistributed to FLSA and Dual Class Members in pro-rata amounts, with FLSA Class members collectively receiving 50% of such amounts, and Dual Class Members receiving 50% of such amounts.

(5)     The Claims Administrator's calculations regarding an individual's proportionate share of the Net Settlement Fund and the individual's settlement payment will be final and binding.

(D)     Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with the tax reporting obligations as described in Section 3.6.

(E)     The Claims Administrator shall mail to all Qualified Class Members their individual settlement payments within fourteen days of the Effective Date. The Claims Administrator shall use all reasonable efforts to make an additional mailing to Qualified Class Members whose checks are returned because of incorrect addresses.

21

(F)     Qualified Class Members and FLSA Class Members will have ninety (90) calendar days after their check date to redeem their individual settlement payments. Absent demonstration of intervening circumstances (i.e. illness, lack of mental fitness, imprisonment, etc.), if not redeemed within the 90 day period, their settlement checks will be void and the amount of such checks shall revert to Defendants. If a Qualified Class Member or an FLSA Class Member alerts Class Counsel, Defendants' Counsel, or the Claims Administrator during the 90-day period to redeem settlement payments that he or she has not received or lost his or her settlement check, the Claims Administrator will, upon confirming that the settlement check in question has not been redeemed, issue a stop payment on the Qualified Class Member's original settlement check and reissue that Qualified Class Member's settlement check. All such reissued checks will be valid for forty-five (45) days after the date of issue and will be void thereafter. The Claims Administrator will provide Defendants' Counsel and Class Counsel with a report, within 14 calendar days of the conclusion of the second redemption period described herein, if any, reflecting the number and amount of all settlement checks that have been declared void. Reversion of that amount shall be made to Defendants within 14 calendar days thereafter.

(G)     All payments to Qualified Class Members and FLSA Class Members made pursuant to the Settlement shall be deemed to be paid to such individuals solely in the year in which such payments actually are received by them.

3.16    **Class Certification for Settlement Purposes Only.** The Parties agree that the Preliminary Approval Motion seeking, *inter alia*, certification of the Rule 23 Class is for purposes of obtaining judicial approval of the terms of the Settlement. If, for any reason, the settlement is not approved, the stipulation to class certification will have no force or effect. The Parties further agree that certification for settlement purposes is in no way an admission that class certification is proper under the standard applied to contested certification motions and that nothing in the Settlement can be construed as evidence that (i) a class should be certified as Plaintiffs proposed or (ii) Defendants are liable to Plaintiffs or the Rule 23 Class.

3.17    **Option to Rescind.**   In addition to retaining the right to declare the Settlement null and void if the Court approves the settlement with respect to one or two of the Classes, but does not approve the settlement with respect to the other Class(es), Defendants also shall have, in their sole discretion, the option to rescind the Settlement with respect to the Rule 23 California Class and/or the Rule 23 New York Class if twenty five percent (25%) or more of the Rule 23 Class Members in the respective Class elect to opt-out of the settlement, in which event all actions taken in furtherance will be thereby null and void the Parties will be restored to their respective positions status quo ante.   Defendants must exercise this right to rescind in writing to Class Counsel within fourteen (14) calendar days after the Claims Administrator notifies the Parties of the total number of valid Opt-Out

22

Statements.  If the option to rescind is exercised, Defendants shall be solely responsible for all costs of the claims administration accrued to that point, and thereafter.  In that event, the Parties will continue to implement the settlement terms applicable to the FLSA Class, and/or the remaining Rule 23 Class.

3.18    **Dismissal of the Action.**  The Parties agree that, upon final approval of the terms of the FLSA Settlement, the Litigation will be dismissed in its entirety with prejudice.

3.20    **Nullification of the Settlement.**  If (i) the Court does not finally approve the settlement as provided herein for the FLSA claims, or (ii) if the Court's final approval of the settlement terms contemplated by the Settlement is reversed or materially modified on appeal as to the FLSA claims, the Settlement shall be null and void and any order or judgment entered by the Court in furtherance of the Settlement shall be treated as void from the beginning.

3.21    **No Solicitation of Settlement Objections or Exclusions.**  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage members of the Class to submit either written objections to the Settlement or to appeal from the Court's final judgment.  Subject to their ethical obligations, Class Counsel will take all reasonably necessary steps to ensure that all FLSA Class Members participate in the settlement.

3.22    **Covenant not to Sue, Representations of Counsel and Representations of Class Members.**  Each Class member acknowledges and agrees that he or she shall not sue or initiate against any Defendants or Releasee any action or other legal proceeding, or participate in the same, individually or as a member of a class, under any contract (express or implied), or any federal, state, or local law, statute, or regulation pertaining in any manner to the Released Claims.

As a material inducement for Defendants to enter into this Settlement, Plaintiffs' counsel, including without limitation Andrew Frisch, Esq., of Morgan and Morgan, P.A., represents and warrants that (a) neither he nor his law firm currently represents, nor is he or his firm currently aware of, any other employee or former employee of Defendants or Releasees who is considering bringing or intends to bring a claim or claims similar to those asserted in the Litigation; (b) neither he nor his law firm is actively seeking or encouraging any other employee or former employee of Defendants or Releasees to bring or assert such claims; (c) neither he nor his law firm are currently publicizing, either electronically (e.g., through a firm-sponsored Website or on Facebook, Twitter or the like) or by any other means, nor will they publicize, this Settlement; (d) neither he nor his law firm has contacted any representative of the media (e.g., press, TV, radio, Internet), or made any press release, public statement, or statement to any third party concerning this settlement, nor will they do so in the future; and (e) in the event they are retained by another employee or former employee of Defendants or Releasees seeking legal representation in connection with a claim or claims similar to those that were asserted in the Litigation, they will notify counsel for Defendants so as to provide Defendants

23

the opportunity to discuss the possible resolution of the matter prior to the filing of any claim or lawsuit.

      3.23.  **Non-Defamation and Remedies.**  All parties hereto agree not to make any oral or written statement to any third party that defames any other party hereto.

3.25  **Miscellaneous.**

    A.    **Cooperation Among the Parties; Further Acts.**  The parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's preliminary and final approval of the Settlement and all of its terms as quickly as possible. Each of the Parties, upon request of the other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of the Settlement.

    B.    **Costs of Suit.**  Except as set forth in this Settlement, the Parties understand and agree that the Parties shall bear their own costs and attorneys' fees incurred in connection with the Litigation, the negotiation of this Settlement and/or any other proceedings, actions, disputes, and/or transactions between them, initiated prior to execution of this Settlement by the Class members, and that no Party is entitled to attorneys' fees or costs from the other except as provided under in this Settlement.

    C.    **Integration.**  The Parties understand and agree that the preceding Sections recite the sole consideration for this Settlement; that no representation or promise has been made by Defendants or Releasees concerning the subject matter of this Settlement, except as expressly set forth in this Settlement; and that all Settlements and understandings between the Parties concerning the subject matter of this Settlement are embodied and expressed in this Settlement. This Settlement shall supersede all prior or contemporaneous Settlements and understandings among any Class member, Defendants, and any other Releasee, whether written or oral, express, or implied.

    D.    **Amendments; Waivers.**  This Settlement may not be amended except by an instrument in writing, signed by each of the Parties. No failure to exercise and no delay in exercising any right, remedy, or power under this Settlement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, or power under this Settlement preclude any other or further exercise thereof, or the exercise of any other right, remedy, or power provided herein or by law or in equity.

    E.    **Knowing and Voluntary Settlement.**  The Parties acknowledge that (i) they have been advised to consult with counsel; (ii) they have had the opportunity to consult counsel in regard to this Settlement; (iii) they have read and understand the Settlement and they are fully aware of its legal effect; and (iv)

they are entering into this Settlement freely and voluntarily, and based on each party's own judgment and not on any representations or promises made by the other party, other than those contained in this Settlement.

F.   **Dispute Resolution.**

1.   **Pre-Arbitration Notice.**   Except as otherwise set forth herein, all disputes concerning the interpretation, calculation, or payment of settlement claims, or other disputes regarding compliance with the Settlement, shall be resolved as follows: (a) if the Plaintiff or Class Counsel, on behalf of the Plaintiff or any Qualified Class Member, or Defendants at any time contend that the other party has breached or acted contrary to the Settlement, that party shall notify the other party in writing of the alleged violation;  (b) upon receiving notice of the alleged violation or dispute, the responding party shall have 10 business days to correct the alleged violation and/or respond to the initiating party with the reasons why the party disputes all or part of the allegation;  (c) if the response does not address the alleged violation to the initiating party's satisfaction, the Parties shall negotiate in good faith for up to 10 days to resolve their differences; and   (d) if Class Counsel and Defendants' counsel are unable to resolve their differences after 30 calendar days of the writing reference in this section, either party may pursue arbitration as set forth in Section 3.26(F)(2).

2.   **Arbitration.** Except with respect to the enforcement of the payment terms contained in Section 3.2 as to which the Court shall retain jurisdiction, all claims that the Parties have against each other, in any way related to the subject matter, interpretation, application, or alleged breach of this Settlement ("Arbitrable Claims") shall be resolved by arbitration. Arbitration of Arbitrable Claims shall be in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association, as amended.   Arbitration shall be final and binding upon the parties and shall be the exclusive remedy for all Arbitrable Claims. Any Party may bring an action in court to compel arbitration under this Settlement and to enforce an arbitration award. Otherwise, no Party shall initiate or prosecute any lawsuit or administrative action in any way related to any Arbitrable Claim. Notwithstanding the foregoing, any Party may, at its option, seek injunctive relief pursuant to Section 1281.8 of the California Code of Civil Procedure.  THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRABLE CLAIMS.

G. **Governing Law.** This Settlement is made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed by and under the laws of the State of Florida.

H. **No Inducement.** The Parties further acknowledge that no representation, promise, or inducement has been made other than as set forth in this Settlement, and that the Parties enter into this Settlement without reliance upon any other representation, promise, or inducement not set forth herein.

I. **Severability.** If any provision of this Settlement, or its application to any person, place, or circumstance, is held by an arbitrator or a court of competent jurisdiction to be invalid, unenforceable, or void, such provision shall be enforced to the greatest extent permitted by law, and the remainder of this Settlement and such provision as applied to other persons, places, and circumstances shall remain in full force and effect.

J. **Execution of Counterparts.** In order to be effective, this Settlement may be executed by fax and/or pdf signature, and in multiple counterpart originals which, taken together, shall constitute a single instrument. Notwithstanding this provision, Class Counsel agree that they shall provide to Defendants' counsel actual original signatures of all Class members and counsel.

K. **Rule of Construction.** This Settlement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Settlement, or any specific term or condition thereof. The Parties each participated in the negotiation and drafting of this Settlement and had available to them the advice and assistance of independent counsel. As such, no Party may claim that any ambiguity in this Settlement should be construed against the other.

L. **Authority to Act.** The parties warrant and represent that they have full authority to and legal standing to enter into all of the Settlements set forth herein.

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Settlement on the following days and year:

Dated: June ____, 2010          By: _____
                                       Karen Palma, Plaintiff

Dated: June ____, 2010          By: _____
                                       Hallie Selgert, Plaintiff

26

Dated:  June ____, 2010            By: _____
                                        Yvonne Pacheco, Plaintiff


Dated:  June ____, 2010            Defendants

                                   By:_____
                                       Name:
                                       Title:

## AGREEMENT AND GENERAL RELEASE

MetroPCS Wireless, Inc. and HALLIE SELGERT, her heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Consideration.** In consideration for signing this Agreement and General Release ("Agreement"), and complying with their terms, MetroPCS Wireless, Inc. agrees to pay to Employee Five Thousand and 00/100 Dollars ($5,000.00) within twenty (20) business days after: (1) MetroPCS Wireless, Inc. receives a signed original of this Agreement; and (2) the Court dismisses, with prejudice, the pending litigation, *Karen Palma, et al. v. MetroPCS Wireless, Inc.,* Case no. 8:13-cv-698-VMC-MAP, in the United States District Court, Middle District of Florida.

2. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "1" above, except for Employee's execution of this Agreement, the Settlement (as defined below), and the fulfillment of the promises contained herein.

3. **General Release. Claims Not Released and Related Provisions**.

a. **General Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges MetroPCS Wireless, Inc., its parent corporation, affiliates, subsidiaries, divisions, other related entities, predecessors, successors and assigns, and its current and former employees, attorneys, officers, directors, owners, shareholders, investors, agents, fiduciaries, their successors, assigns, and representatives, both individually and/or in their business capacities, including T-Mobile USA, Inc., its parent corporation, affiliates, subsidiaries, divisions, other related entities, predecessors, successors and assigns, and its current and former employees, attorneys, officers, directors, owners, shareholders, investors, agents, fiduciaries, their successors, assigns, and representatives, both individually and/or in their business capacities (collectively "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (as modified below);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Age Discrimination in Employment Act of 1967 ("ADEA");

- The Family and Medical Leave Act;

- The Equal Pay Act;

- The Florida Civil Rights Act – Fla. Stat. § 760.01, et seq.;

- Florida's Private-Sector Whistleblower Act – Fla. Stat. § 448.101, et seq.;

- Florida's Statutory Provision Regarding Retaliation/Discrimination for Filing a Workers Compensation Claim – Fla. Stat. § 440.205;

- Florida's Statutory Provision Regarding Wage Rate Discrimination Based on Sex – Fla. Stat. § 448.07;

- The Florida Equal Pay Act – Fla. Stat. § 725.07;

- Florida's Wage Payment Laws, Fla. Stat. §§ 448.01, 448.08;

- The Florida Omnibus AIDS Act – Fla. Stat. § 760.50;

- Florida's Statutory Provisions Regarding Employment Discrimination on the Basis of and Mandatory Screening or Testing for Sickle-Cell Trait – Fla. Stat. §§ 448.075, 448.076;

- Florida Minimum Wage Act, Article X, § 24 of the Florida Constitution;

- Florida's General Labor Regulations, Fla. Stat. ch. 448;

- any other federal, state or local law, rule, regulation, or ordinance;

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

       b.     **Claims Not Released.** Employee is not waiving any rights he/she may have to: (a) his/her own vested accrued employee benefits under Releasees' health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

2

c.     **Governmental Agencies.**  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.     **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Releasees or any other Releasee identified in this Agreement is a party.

4.     **Acknowledgments and Affirmations.**

Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Releasees, except *Karen Palma, et al. v. MetroPCS Wireless, Inc.,* Case no. 8:13-cv-698-VMC-MAP, in the United States District Court, Middle District of Florida ("the Litigation").

Employee also affirms that Employee has reported all hours worked as of the date Employee signs this Agreement and/or with the payments required by the Joint Stipulation of Class and Collective Action Settlement and General Release in connections with the Litigation will have been paid and/or will have received all compensation, wages, bonuses, commissions, and/or benefits which are due and payable as of the date Employee signs this Agreement. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Releasees or its officers, including any allegations of corporate fraud.

Employee affirms that all of Releasees' decisions regarding Employee's pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

Employee affirms that all of Releasees' decisions regarding Employee's pay and benefits through the date of Employee's Separation Date were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

5.     **Confidentiality**.  Employee agrees not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Agreement, the Joint Stipulation of Class and Collective Action Settlement and General Release, the case *Karen*

*Palma, et al. v. MetroPCS Wireless, Inc. et al.* filed in the Supreme Court of New York, New York County and/or any subsequent cases which are filed for the purpose of seeking approval of the non-FLSA portions of the settlement, except to Employee's spouse, tax advisor, an attorney with whom Employee chooses to consult regarding Employee's consideration of this Agreement or any federal, state, or local government agency.

Employee affirms that if no longer employed by any Releasee, he/she has returned all of Releasees' property, documents, and/or any confidential information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at any Releasees' premises and that no Releasee is in possession of any of Employee's property.

Plaintiff and Plaintiff's counsel agree that they shall not publicize, or issue a press release or any equivalent statement, to any person, including any media outlet, service, or reporter, referring to (i) the Action or its resolution, (ii) Defendants, (iii) Releasees, (iv) the case *Karen Palma, et al. v. MetroPCS Wireless, Inc. et al.* filed in the Supreme Court of New York, New York County, or (v) any subsequent cases which are filed for the purpose of seeking approval of the non-FLSA portions of the settlement.

The requirement of confidentiality binds only Employee and not any other member or participant of the Litigation.

If MetroPCS or its successor's human resource department is contacted for a reference for Employee, it shall refer the contact to T-Mobile's Work Number, an automated service, that provides provide proof of employment and income verifications.

6. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state in which Employee worked during the relevant time period without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

7. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

8. **Amendment**. This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

9. **Entire Agreement.** This Agreement and the Settlement set forth the entire agreement between the Parties hereto, and fully supersede any prior agreements or understandings between the Parties regarding the subject matter herein. Employee acknowledges

4

6.    **Governing Law and Interpretation.**   This Agreement shall be governed and conformed in accordance with the laws of the state in which Employee worked during the relevant time period without regard to its conflict of laws provision.   In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.   Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

7.    **Nonadmission of Wrongdoing.**   The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

8.    **Amendment.**  This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

9.    **Entire Agreement.**   This Agreement and the Settlement set forth the entire agreement between the Parties hereto, and fully supersede any prior agreements or understandings between the Parties regarding the subject matter herein. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement and the Settlement.

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

MetroPCS Wireless, Inc.

By: _____
HALLIE SELGERT

By:_____
[Name of Person Signing]
[Title of Person Signing]

Date: 8/4/2014 _____

Date:_____

5

## AGREEMENT AND GENERAL RELEASE

MetroPCS Wireless, Inc. and Hector Casta, his heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Consideration.**  In consideration for signing this Agreement and General Release ("Agreement"), and complying with their terms, MetroPCS Wireless, Inc. agrees to pay to Employee Five Thousand and 00/100 Dollars ($1,000.00) within twenty (20) business days after: (1) MetroPCS Wireless, Inc. receives a signed original of this Agreement; and (2) the Court dismisses, with prejudice, the pending litigation, *Karen Palma, et al. v. MetroPCS Wireless, Inc.,* Case no. 8:13-cv-698-VMC-MAP, in the United States District Court, Middle District of Florida.

2. **No Consideration Absent Execution of this Agreement.**  Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "1" above, except for Employee's execution of this Agreement, the Settlement (as defined below), and the fulfillment of the promises contained herein.

3. **General Release. Claims Not Released and Related Provisions**.

a. **General Release of All Claims.**  Employee knowingly and voluntarily releases and forever discharges MetroPCS Wireless, Inc., its parent corporation, affiliates, subsidiaries, divisions, other related entities, predecessors, successors and assigns, and its current and former employees, attorneys, officers, directors, owners, shareholders, investors, agents, fiduciaries, their successors, assigns, and representatives, both individually and/or in their business capacities, including T-Mobile USA, Inc., its parent corporation, affiliates, subsidiaries, divisions, other related entities, predecessors, successors and assigns, and its current and former employees, attorneys, officers, directors, owners, shareholders, investors, agents, fiduciaries, their successors, assigns, and representatives, both individually and/or in their business capacities (collectively "Releasees")**,** of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (as modified below);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Age Discrimination in Employment Act of 1967 ("ADEA");

- The Family and Medical Leave Act;

- The Equal Pay Act;

- The Florida Civil Rights Act – Fla. Stat. § 760.01, et seq.;

- Florida's Private-Sector Whistleblower Act – Fla. Stat. § 448.101, et seq.;

- Florida's Statutory Provision Regarding Retaliation/Discrimination for Filing a Workers Compensation Claim – Fla. Stat. § 440.205;

- Florida's Statutory Provision Regarding Wage Rate Discrimination Based on Sex – Fla. Stat. § 448.07;

- The Florida Equal Pay Act – Fla. Stat. § 725.07;

- Florida's Wage Payment Laws, Fla. Stat. §§ 448.01, 448.08;

- The Florida Omnibus AIDS Act – Fla. Stat. § 760.50;

- Florida's Statutory Provisions Regarding Employment Discrimination on the Basis of and Mandatory Screening or Testing for Sickle-Cell Trait – Fla. Stat. §§ 448.075, 448.076;

- Florida Minimum Wage Act, Article X, § 24 of the Florida Constitution;

- Florida's General Labor Regulations, Fla. Stat. ch. 448;

- any other federal, state or local law, rule, regulation, or ordinance;

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

       b.    **Claims Not Released.**  Employee is not waiving any rights he/she may have to: (a) his/her own vested accrued employee benefits under Releasees' health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

2

c.   **Governmental Agencies.**  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.   **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Releasees or any other Releasee identified in this Agreement is a party.

4.   **Acknowledgments and Affirmations.**

Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Releasees, except *Karen Palma, et al. v. MetroPCS Wireless, Inc.,* Case no. 8:13-cv-698-VMC-MAP, in the United States District Court, Middle District of Florida ("the Litigation").

Employee also affirms that Employee has reported all hours worked as of the date Employee signs this Agreement and/or with the payments required by the Joint Stipulation of Class and Collective Action Settlement and General Release in connections with the Litigation will have been paid and/or will have received all compensation, wages, bonuses, commissions, and/or benefits which are due and payable as of the date Employee signs this Agreement. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Releasees or its officers, including any allegations of corporate fraud.

Employee affirms that all of Releasees' decisions regarding Employee's pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

Employee affirms that all of Releasees' decisions regarding Employee's pay and benefits through the date of Employee's Separation Date were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

5.   **Confidentiality**.  Employee agrees not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Agreement, the Joint Stipulation of Class and Collective Action Settlement and General Release, the case *Karen*

3

*Palma, et al. v. MetroPCS Wireless, Inc. et al.* filed in the Supreme Court of New York, New York County and/or any subsequent cases which are filed for the purpose of seeking approval of the non-FLSA portions of the settlement, except to Employee's spouse, tax advisor, an attorney with whom Employee chooses to consult regarding Employee's consideration of this Agreement or any federal, state, or local government agency.

Employee affirms that if no longer employed by any Releasee, he/she has returned all of Releasees' property, documents, and/or any confidential information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at any Releasees' premises and that no Releasee is in possession of any of Employee's property.

Plaintiff and Plaintiff's counsel agree that they shall not publicize, or issue a press release or any equivalent statement, to any person, including any media outlet, service, or reporter, referring to (i) the Action or its resolution, (ii) Defendants, (iii) Releasees, (iv) the case *Karen Palma, et al. v. MetroPCS Wireless, Inc. et al.* filed in the Supreme Court of New York, New York County, or (v) any subsequent cases which are filed for the purpose of seeking approval of the non-FLSA portions of the settlement.

The requirement of confidentiality binds only Employee and not any other member or participant of the Litigation.

If MetroPCS or its successor's human resource department is contacted for a reference for Employee, it shall refer the contact to T-Mobile's Work Number, an automated service, that provides provide proof of employment and income verifications.

6. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state in which Employee worked during the relevant time period without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

7. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

8. **Amendment**. This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

9. **Entire Agreement.** This Agreement and the Settlement set forth the entire agreement between the Parties hereto, and fully supersede any prior agreements or understandings between the Parties regarding the subject matter herein. Employee acknowledges

4

that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement and the Settlement.

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

MetroPCS Wireless, Inc.


By:_____

By:_____
    Hector Casta

[Name of Person Signing]
[Title of Person Signing]

Date:_____

Date:_____


4815-0968-1692, v. 1

5

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------x

KAREN PALMA and YVONNE
PACHECO, on behalf of themselves
and those similarly situated,

                Plaintiffs,

     -against-

METROPCS WIRELESS, INC.,
METROPCS CALIFORNIA, LLC,
METROPCS NEW YORK, LLC,
METROPCS FLORIDA, LLC
METROPCS NETWORKS CALIFORNIA, LLC,
and METROPCS NETWORKS, LLC,

                Defendants.

------------------------------------------------------------------x

Index No.

CLASS ACTION COMPLAINT

        Plaintiffs, KAREN PALMA and YVONNE PACHECO ("Plaintiffs"), on behalf of themselves and other employees and former employees similarly situated, by and through undersigned counsel, file this Class Action Complaint against Defendants, METROPCS WIRELESS, INC., METROPCS CALIFORNIA, LLC, METROPCS NEW YORK, LLC, METROPCS NETWORKS CALIFORNIA, LLC and METROPCS NETWORKS, LLC (collectively "MetroPCS" or "Defendants"), and allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

## NATURE OF THE ACTION

        1.     Plaintiffs allege on behalf of themselves and other similarly situated current and former Account Service Representative ("ASR") employees of Defendants who worked for Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC in the State of New York ("the New York Class"), pursuant to Article 9 of the New York Civil Practice Law and

Rules ("CPLR"), that they are entitled to wages, premium pay and penalties for violations of New York Labor Law, Article 19 §§ 650, *et seq.*, New York Labor Law Article 6, §§ 190 *et seq.*, and the supporting New York Department of Labor regulations (together, "NYLL").  Plaintiffs allege that Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC have wilfully engaged in a pattern, practice, and policy of unlawful conduct by failing to pay Plaintiff Palma, and similarly situated workers in New York: (1) at least minimum wage for all hours worked; (2) overtime compensation for all hours worked beyond forty in a workweek; and (3) for all other forms of wages and compensation.  Plaintiffs allege the above actions violated their rights under the NYLL, New York Labor Law Article 6, §§ 190, *et seq.*, the New York Minimum Wage Act, New York Labor Law §§ 650, *et seq.*, New York Labor Law § 193, New York Labor Law, Article 6, §195(1), and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 14.

3.     Plaintiffs further allege on behalf of themselves and other similarly situated current and former ASR employees of the Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC, who worked for Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC in California ("the California Class"), pursuant to Article 9 of the CPLR, that they are entitled to wages, premium pay and penalties for: (1) overtime work for which they did not receive overtime premium pay as required by California Labor Code sections 510 and 1194; (2) the failure of Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC to provide required meal breaks and rest breaks as required by California Labor Code section 512, the applicable I.W.C. Wage Order and California Labor Code section 226.7; (3) the failure to pay all accrued and vested vacation and/or paid time off wages in violation of California Labor Code section 227.3; (4) the failure to provide complete and accurate wage statements in violation of California Labor Code section 226; (5) the failure to timely pay all earned

wages due at separation of employment in violation of California Labor Code sections 201, 202 and 203; (6) the failure to reimburse business expenses reasonably incurred in direct consequence of the discharge of their duties in violation of California Labor Code 2802; (7) unfair business practices in violation of Business and Professions Code section 17200, *et seq.*; and (8) penalties under the California Private Attorney General Act (California Labor Code section 2699, *et seq.*) for violations of California Labor Code sections 201, 202, 203, 226, 226.7, 227.3, 510, 1194, 2802, and others.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the parties, in that, upon information and belief, Plaintiffs and Defendants either reside in New York, or have significant contacts in New York State.

5.      Venue in this country is appropriate in that the events giving rise to Plaintiffs' claims occurred, in a substantial part, in New York County.

## PARTIES

6.      At all times material hereto, Plaintiff, KAREN PALMA ("Palma") has worked for Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC as a non-exempt Account Service Representative ("ASR").

7.      Palma worked as a non-exempt ASR for Defendants throughout Bronx County, New York, from January 8, 2009, until September 10, 2010.   Thereafter, from September 13, 2010, until the present, Palma has worked as a non-exempt ASR for Defendants METROPCS WIRELESS, INC. and METROPCS FLORIDA, LLC, throughout the Tampa, Florida area.

8.      Plaintiff, YVONNE PACHECO ("Pacheco"), worked for Defendants, METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC, as a non-exempt ASR, in the Los Angeles, California area, from approximately October 2008, through February 2012.

9.      At all times material hereto, MetroPCS was and continues to be a Delaware

Corporation, with its corporate headquarters located in Richardson, Texas.

10.     MetroPCS is the fifth largest facilities-based wireless broadband mobile communications provider in the United States, based on the number of customers served.  As of December 31, 2011, MetroPCS had over 9.3 customers.

11.     MetroPCS offers wireless broadband services under the MetroPCS brand-name in selected major metropolitan areas in the United States.

12.     MetroPCS provides a variety of wireless broadband services to its customers on a no long-term contract, paid-in-advance basis.

13.     All of MetroPCS' services are provided through its wholly-owned subsidiaries. These subsidiaries include Defendants: MetroPCS California, LLC, MetroPCS New York, LLC, MetroPCS Networks California, LLC and MetroPCS Networks, LLC (collectively the "subsidiaries").  This class action is intended to include the ASR employees of MetroPCS and all of its aforementioned subsidiaries.

14.     At all times relevant hereto, MetroPCS and its aforementioned wholly-owned subsidiaries operated, and continue to operate, as one "joint enterprise."

15.     At all times relevant hereto, MetroPCS and its aforementioned wholly-owned subsidiaries operated, and continue to operate, as an "integrated enterprise."

16.     At all times material hereto, MetroPCS and its aforementioned wholly-owned subsidiaries were Plaintiffs' "joint employers."

17.     At all times material hereto, MetroPCS operated all of its aforementioned subsidiaries.

18.     At all times material hereto, MetroPCS co-mingled the assets of all of its wholly-owned subsidiaries together and reported the earnings of same collectively.

19.     At all times material hereto, MetroPCS funded all of the subsidiaries from a

common fund.

20.     At all times material hereto, MetroPCS jointly employed the same employees, in the same or similar role, simultaneously as one joint enterprise.

21.     At all times material hereto, MetroPCS and all of its aforementioned subsidiaries, all maintained their principle place of business at 2250 Lakeside Boulevard, Richardson, Texas.

22.     At all times material hereto, MetroPCS and all of its aforementioned subsidiaries, had common personnel in departments such as IT, accounting, human resources, and marketing.

23.     At all times material hereto, MetroPCS and all of its aforementioned subsidiaries had common senior officers and/or management.

24.     At all times material hereto, Roger Linquist ("Linquist") jointly and simultaneously served and continues to serve as the Chairman and Chief Executive Officer of MetroPCS and all of the aforementioned subsidiaries.

25.     At all times material hereto, Mark Stachiw ("Stachiw") jointly and simultaneously served and continues to serve as General Counsel, Secretary and Vice Chairman of MetroPCS and of all of the aforementioned subsidiaries.

26.     At all times material hereto, Thomas Keys ("Keys") jointly and simultaneously served and continues to serve as President and Chief Operating Officer of MetroPCS and of all of the aforementioned subsidiaries.

27.     At all times material hereto, J. Braxton Carter ("Carter") jointly and simultaneously served and continues to serve as Chief Financial Officer and Vice Chairman of MetroPCS and of all of the aforementioned subsidiaries.

28.     At all times material hereto, Malcolm Lorang ("Lorang") jointly and simultaneously served and continues to serve as Senior Vice President and Chief Technology Officer of MetroPCS and of all of the aforementioned subsidiaries.

29.     At all times material hereto, Christine Kornegay ("Kornegay") jointly and simultaneously served and continues to serve as Senior Vice President, Controller, and Chief Accounting Officer of MetroPCS and of all of the aforementioned subsidiaries.

30.     At all times material hereto, Tom Currier ("Currier") jointly and simultaneously served and continues to serve as Senior Vice President, Human Resources of MetroPCS and of all of the aforementioned subsidiaries.

31.     At all times material hereto the aforementioned joint employees: Linquist, Stachiw, Keys, Carter, Lorang, Kornegay, and Currier, and others received one paycheck, from one MetroPCS for each pay period, despite the fact that they performed work for all of the subsidiaries on a day-to-day and week-to-week basis.

32.     At all times relevant hereto, MetroPCS and its aforementioned subsidiaries shared one common internet domain, http://www.metropcs.com.

33.     At all times relevant hereto, MetroPCS and its aforementioned subsidiaries shared and maintained a common website.  *See* http://www.metropcs.com/metro/maps/coverage-map.jsp.

34.     At all times relevant hereto, MetroPCs and its aforementioned subsidiaries shared one common general counsel, Mark Stachiw.

35.     At all times relevant hereto, MetroPCS and its aforementioned subsidiaries shared common corporate offices.

36.     At all times relevant hereto, MetroPCS and its aforementioned subsidiaries shared a common telephone number for their corporate offices.

37.     At all times relevant hereto, MetroPCS and its aforementioned subsidiaries shared a common mailing address for their corporate offices.

38.     At all times relevant hereto, MetroPCS and its aforementioned subsidiaries shared common lines of credit or accounts with one or more vendors, such as Samsung, LG, and other

cellular phone manufacturers.

39.    At all times relevant hereto, MetroPCS and its aforementioned subsidiaries utilized the same proprietary "Midas" computer system.

40.    At all times relevant hereto, MetroPCS and its aforementioned subsidiaries engaged in related operations.   Specifically, MetroPCS and its aforementioned subsidiaries engaged in selling and servicing MetroPCS' wireless and broadband products and services.

41.    At all times relevant hereto, MetroPCS and its aforementioned subsidiaries had the common business purpose of selling and servicing MetroPCS' products and services under the MetroPCS brand-name.

42.    At all times relevant hereto, MetroPCS and its aforementioned subsidiaries maintained a network of hundreds of company owned and "exclusive" authorized stores, as well as authorized multiple-carrier dealer stores in nineteen metropolitan markets, spread throughout the United States, all of which jointly serviced MetroPCS' consumers/customers simultaneously. *See* http://www.metropcs.com/metro/maps/coverage-map.jsp.

43.    At all times relevant hereto, Plaintiffs, and those similarly situated to them, were responsible for supporting the aforementioned MetroPCS stores and authorized dealer stores.

44.    MetroPCS was and continues to be Plaintiffs' "employer" within the meaning of the New York Labor Law and California Labor Code.

45.    At all times material hereto, Plaintiffs were "employees" of MetroPCS within the meaning of the New York Labor Law and California Labor Code.

46.    MetroPCS and its aforementioned subsidiaries were and continue to be Plaintiffs' "joint employer" within the meaning of the New York Labor Law and California Labor Code.

## CLASS ALLEGATIONS

47.    This action is properly maintainable as a class action pursuant to Article 9 of the

CPLR.

48.     This action is brought on behalf of the Plaintiffs, and a putative class consisting of the New York Class and California Class, who are eligible class members that were employed at any time between May 2008(New York)/May 2010(CA) and December 31, 2013.

49.     The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be in excess of 100 individuals.  In addition, the names of all potential members of the putative class are not known.

50.     The questions of law and fact common to the putative class predominate over any questions affecting only individual members.

51.     The claims of the Plaintiffs are typical of the claims of the putative class.

52.     The Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class.

53.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

54.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

55.     Upon information and belief, many of the members of the putative class are residents of the State of New York.

56.     MetroPCS owns, operates and maintains a wireless network throughout the United States, and simultaneously operates its stores throughout multiple states, including New York.

57.     At all times material hereto, MetroPCS and its aforementioned subsidiaries simultaneously served the same customers and/or had the ability to simultaneously serve the same customers.

58.     At all times material hereto, MetroPCS and its aforementioned subsidiaries

maintained an identical job description for all ASRs, and uniformly classified the ASR position as exempt from overtime provisions.

59.     The additional persons who may become plaintiffs in this action are/were employees who worked as ASRs for MetroPCS and its aforementioned subsidiaries, who held non-exempt ASR positions similar to Plaintiffs and who worked in excess of forty (40) hours during one or more work weeks during the relevant time periods, but who did not receive proper pay at one and one-half times their regular rate for their hours worked in excess of forty (40) hours.

60.     The additional persons who may become plaintiffs in this action as part of the New York Class are/were employees who worked as ASRs for Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC, who held non-exempt ASR positions similar to Plaintiffs' and who worked in excess of 40 hours in a week during one or more workweeks during the relevant time periods, but who did not receive proper pay for their hours worked in excess of 40 in a week during the New York Class Period, as defined below.

61.     The additional persons who may become plaintiffs in this action as part of the California Class are/were employees who worked as ASRs for Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC, who held non-exempt ASR positions similar to Plaintiffs' and who worked in excess of eight hours in a day or 40 hours in a week during one or more workweeks during the relevant time periods, but who did not receive proper pay for their hours worked in excess of eight in a day or 40 in a week; who were not provided required meal breaks and rest breaks, who were not paid all accrued and vested vacation and or paid time off wages at the time of separation, who were not provided complete inaccurate wage statements, who are not timely paid all earned wages due at separation of employment, and/or who were not reimbursed all business expenses reasonably incurred in the discharge of their

duties during the California Class Period, as defined below.

62.     At all times material hereto, the work performed by the Plaintiffs was directly essential to the business performed by MetroPCS.

## COMMON FACTUAL ALLEGATIONS

63.     During their employment with MetroPCS, Plaintiffs and those similarly situated employees were not paid complete overtime compensation due to the common practice and procedures of MetroPCS, whereby MetroPCS uniformly classified, at all times prior to December 31, 2013, all of its ASR employees as exempt from overtime.

64.     Plaintiffs and other similarly situated ASRs were all paid a salary plus commissions.

65.     Plaintiffs and other similarly situated ASRs all worked in excess of forty (40) hours in one or more workweeks, during the time periods relevant to the instant claims.

66.     When Plaintiffs and other similarly situated ASRs worked overtime hours, they were not paid any overtime premiums.

67.     Thus, Plaintiffs and other similarly situated ASRs have been routinely underpaid the overtime compensation they earned.

68.     The additional persons who may become plaintiffs in this action are employees who held ASR positions similarly to those held by Plaintiffs, who worked in excess of forty (40) hours during one or more work weeks during the relevant time periods and were subject to the same illegal pay practices and procedures.

69.     MetroPCS failed to keep any record of the hours Plaintiffs worked, or of the hours worked by any of its similarly situated ASRs.

70.     At all times prior to December 31, 2013, MetroPCS failed to compensate Plaintiffs and other similarly situated ASRs at a rate of one and one-half times their regular rate for all hours worked in excess of forty (40) hours in a single work week.

71.     Plaintiffs should be compensated at the rate of one and one-half times Plaintiffs'
regular rate for those hours that Plaintiffs worked in excess of forty (40) hours per week.

73.     Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC
have violated New York Labor Law ("NYLL") as to the New York Class in that:

a.  The New York Class worked in excess of forty (40) hours per week for the period
    of employment with MetroPCS;

b.  No payments or provisions for payment have been made by MetroPCS to properly
    compensate the New York Class at the statutory rate of one and one-half times
    Plaintiffs' regular rate for those hours worked in excess of forty (40) hours per
    work week, as provided by the NYLL;

c.  No payments or provisions for payment have been made by Defendants
    METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC to properly
    compensate the New York Class for minimum wage, spread of hours pay, call-in
    pay, and/or other forms of wages and compensation required by the NYLL, New
    York Labor Law Article 6, §§ 190 et seq., the New York Minimum Wage Act,
    New York Labor Law §§ 650 et seq., and the supporting New York State
    Department of Labor regulations, 12 N.Y.C.R.R. Part 14;

d.  Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC
    withheld or deducted from wages of Plaintiff Palma and the New York Class in
    violation of New York Labor Law § 193;

e.  Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC
    failed to provide the New York Class with wage notices, as required by New York
    Labor Law, Article 6, §195(1); and

f.  Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC

failed to maintain proper time records as mandated by the NYLL.

74. Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC have violated California law as to the California Class in that:

    a. The California Class worked in excess of eight hours in a day and/or 40 hours in a week for the period of their employment with MetroPCS;

    b. No payments have been made by Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC to properly compensate the California Class at the statutory premium rate required for those hours worked in excess of eight in a day and/or 40 in a week;

    c. The California Class was not provided required meal breaks and/or rest breaks;

    d. No payments have been made by Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC to properly compensate the California Class for their missed meal breaks and/or rest breaks as required by California Labor Code section 226.7;

    e. The California Class were not provided with itemized wage statements containing all of the information required by California Labor Code section 226, including but not limited to, total hours worked by the employee and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate;

    f. At the time of separation of employment, members of the California Class who are no longer employed by Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC, were not paid all accrued and unused vacation wages;

    g. At the time of separation of employment, members of the California Class who are

no longer employed by Defendants METROPCS WIRELESS, INC. and

METROPCS CALIFORNIA, LLC were not paid all wages due and owing to them;

and

h.  Members of the California Class were not reimbursed for all business expenses

reasonably incurred in the discharge of their duties.

75.   Plaintiffs have retained the law firm of MORGAN & MORGAN, P.A. to represent

them in the litigation and have agreed to pay the firm a reasonable fee for its services.

## NEW YORK CLASS ALLEGATIONS

76.   Plaintiff Palma brings Count I on her own behalf and as a class action pursuant to

Article 9 of the CPLR.  The New York Class is defined as:

**All persons who worked for Defendants METROPCS WIRELESS, INC. or
METROPCS NEW YORK, LLC as an Account Service Representative in the
State of New York at any time from May 2008 through December 31, 2013**
(the "New York Class" and "New York Class Period," respectively).

77.   The persons in the New York Class identified above are so numerous that joinder

of all members is impracticable.  Although the precise number of such persons is unknown, upon

information and belief, Defendants METROPCS WIRELESS, INC. and METROPCS NEW

YORK, LLC have employed at least one hundred persons who satisfy the definition of the New

York Class.

78.   There are questions of law and fact common to this New York Class that

predominate over any questions solely affecting individual members of the New York Class,

including but not limited to:

a.  whether Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK,
LLC unlawfully failed to pay minimum wage, overtime compensation, spread of hours
pay, call-in pay, and/or other forms of wages and compensation in violation of and
within the meaning of the New York Labor Law, New York Labor Law Article 6, §§
190 *et seq.*, the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*,
and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R.

Part 142;

b.  whether Plaintiff Palma and the New York Class are non-exempt employees entitled to minimum wage, overtime compensation, call-in pay, and spread of hours pay for hours worked under the pay requirements of New York Law;

c.  whether Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC unlawfully withheld or deducted from wages of Plaintiff Palma and the New York Class in violation of New York Labor Law § 193;

d.  whether Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC employed Plaintiff Palma and the New York Class within the meaning of the New York Labor Law;

e.  whether Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC failed to keep accurate time records for all hours worked by Plaintiff Palma and the New York Class;

f.  whether Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC failed to provide Plaintiff Palma and the New York Class with wage notices, as required by New York Labor Law, Article 6, §195(1);

g.  the proper measure of damages sustained by the New York Class; and

h.  whether Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC should be enjoined from such violations in the future.

79.   Plaintiff Palma's claims are typical of those of the New York Class.  Plaintiff Palma, like other members of the New York Class, was subjected to Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's policy and practice of refusing to pay proper minimum wage, overtime compensation, and all other forms of wages and compensation in violation of New York law.  Plaintiff Palma's job duties as an ASR were typical of those other New York Class members.

80.   Plaintiff Palma will fairly and adequately protect the interests of the New York Class, and has retained counsel experiences in complex wage and hour class and collective action litigation.

81.   A class action is superior to other available methods for the fair and efficient

adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in court against large corporate Defendants.

82.     Class certification of Count I is appropriate pursuant to Article 9 of the CPLR because Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC acted or failed to act on grounds generally applicable to the New York Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the New York Class as a whole.  The New York Class is also entitled to injunctive relief to end Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC.

83.     Class certification of Count I is also appropriate under Article 9 of the CPLR because questions of law and fact common to the New York Class predominate over any questions affecting only individual members of the New York Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's common and uniform policies and practices denied the New York Class the minimum wage and overtime pay to which they are entitled.  The damages suffered by the individual New York Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's practices.

84.     Plaintiff Palma intends to send notice to all members of the New York Class to the extent required by Article 9 of the CPLR.

## CALIFORNIA CLASS ALLEGATIONS

85.    Plaintiff Pacheco brings Count II on her own behalf and as a class action pursuant to Article 9 of the CPLR.

86.    Plaintiffs bring their California law claims on behalf of all persons who were employed in California by METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC at any time between May 2010through December 31, 2013 (the "California Class Period"), who were non-exempt ASR employees within the meaning of California law and have not been paid for hours actually worked as well as overtime wages as required, have not been provided meal breaks and/or rest breaks as required, have not been provided with proper itemized wage statements as required, have not been paid all accrued but unused vacation pay at the time of separation as required, have not been paid all wages due at the time of separation of employment, and have not been reimbursed for business expenses incurred in direct consequence of the discharge of their duties.

87.    The persons in the California Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC, upon information and belief, there are over one hundred members of the California Class during the California Class Period.

88.    Plaintiffs' claims are typical of the claims of the California Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy--particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in court against a large corporate Defendants.

89.     METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC have acted or failed to act on grounds generally applicable to the California Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the California Class as a whole.

90.     Plaintiffs will fairly and adequately protect the interests of the California Class and have retained competent counsel experienced in wage and hour law and class action litigation.

91.     Plaintiffs have the same interests in this matter as all other members of the California Class and their claims are typical of the California Class.

92.     Accordingly, the California Class members are properly defined as:

**All Account Service Representatives who worked for METROPCS WIRELESS, INC. or METROPCS CALIFORNIA, LLC within the state of California, from May 2010 to December 31, 2013, who were not compensated at premium rates for all hours worked in excess of eight in a day or 40 in a week in one or more workweeks; who have not been provided required meal breaks and/or rest breaks; have not been provided with proper itemized wage statements; have not been paid all accrued but unused vacation wages at the time of separation of employment; have not been paid all wages due at the time of separation of employment; and have not been reimbursed for business expenses incurred in direct consequence of the discharge of their duties.**

93.     There are questions of law and fact common to the California Class which predominate over any questions solely affecting the individual members of the California Class, including but not limited to:

a.  whether Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC employed the members of the California Class within the meaning of California law;

b.  whether Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC failed to keep true and accurate time records for all hours worked by members of the California Class;

c.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.  whether Defendants METROPCS WIRELESS, INC. and METROPCS
CALIFORNIA, LLC failed and/or refused to pay members of the California Class
premium pay for hours worked in excess of eight in a day and or 40 in a week within
the meaning of California law;

e.  whether Defendants METROPCS WIRELESS, INC. and METROPCS
CALIFORNIA, LLC failed to provide required meal breaks and/or rest breaks to the
California Class;

f.  whether Defendants METROPCS WIRELESS, INC. and METROPCS
CALIFORNIA, LLC failed to pay all accrued but unused vacation wages at the time of
separation to members of the California Class who separated from employment;

g.  whether Defendants METROPCS WIRELESS, INC. and METROPCS
CALIFORNIA, LLC failed to pay all wages due and owing at the time of separation to
members of the California Class who separated from employment;

h.  whether Defendants METROPCS WIRELESS, INC. and METROPCS
CALIFORNIA, LLC failed to reimburse members of the California Class for business
expenses incurred in direct consequence of the discharge of their duties;

i.  whether Defendants METROPCS WIRELESS, INC. and METROPCS
CALIFORNIA, LLC have committed unfair business practices in violation of
California Business and Professions Code section 17200, *et seq.* this;

j.  whether Defendants METROPCS WIRELESS, INC. and METROPCS
CALIFORNIA, LLC are liable for violations of the California Private Attorney
General Act, Labor Code section 2699, *et seq.*;

k.  whether Defendants METROPCS WIRELESS, INC. and METROPCS
CALIFORNIA, LLC are liable for all damages claimed hereunder, including, but not
limited to, costs, disbursements and attorney's fees; and

l.  whether Defendants METROPCS WIRELESS, INC. and METROPCS
CALIFORNIA, LLC should be enjoined from such violations of California law in the
future.

## COUNT I
## VIOLATION OF THE NEW YORK LABOR LAW – NEW YORK CLASS

94.     Plaintiffs reallege and reaver paragraphs 1 through 93 as if fully set forth herein.

95.     At all times relevant to this action, Plaintiff Palma and the New York Class were

employed by Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC

(within the meaning of New York Labor Law Article 19 and New York Labor Law Article 6) in a non-exempt position under federal and New York State law.

96.     By the course of conduct set forth above, Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC have violated the New York Labor Law Article 19, §§ 650 *et seq.*, New York Labor Law Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 (collectively, "New York Labor Laws").

97.     New York Labor Law requires an employer, such as Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC, to pay the minimum wage and overtime compensation to all non-exempt employees.  The New York Labor Law also requires an employer to pay employees for all hours worked at the agreed upon rate of pay, provide compensation for call-in pay, and to pay spread of hours pay at the basic  New York minimum hourly wage on days in which the length of their workday was more than ten hours.

98.     Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC have had a policy and practice of failing and refusing to pay minimum wages, proper overtime wages, call-in pay, spread of hours pay and wages for all hours worked at the agreed upon rate of pay, to members of the New York Class.

99.     Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC unlawfully withheld or deducted from wages of members of the New York Class in violation of New York Labor Law § 193.

100.     As a result of Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's failure to pay wages earned and due, and its decision to withhold wages earned and due to members of the New York Class, Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC have violated and continue to violate the New York Labor

Law.

101.    Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC have willfully failed to supply members of the New York Class with wage notices, as required by NYLL, Article 6, § 195(1) and the supporting New York State Department of Labor Regulations.

102.    Because of Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's willful violations of NYLL, Article 6, § 195(1), members of the New York Class are entitled to statutory penalties of fifty dollars for each workweek that Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC failed to provide them with wage notices, or a total of twenty-five hundred dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

103.    Plaintiff Palma, on behalf of herself and the New York Class, seeks the amount of their underpayments based on Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's failure to pay wages of at least the minimum wage for all hours worked, one and one half times the regular rate of pay for work performed in excess of forty per week, and one hour at the New York hourly minimum wage for all days on which the length of their workday was more than ten hours, all as provided by the New York Labor Law, liquidated damages and such other legal and equitable relief from Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's unlawful and willful conduct as the Court deems just and proper.

104.    Plaintiff Palma, on behalf of herself and the New York Class, seeks amounts unlawfully withheld or deducted from wages by Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC in violation of New York Labor Law § 193, liquidated damages and such other legal and equitable relief from Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's unlawful and willful conduct as the Court deems just and

proper.

105.   Plaintiff Palma, on behalf of herself and the New York Class, seeks the amount of their underpayments based on Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's failure to provide call-in pay as required by 12 NYCRR § 142-2.3, liquidated damages and such other legal and equitable relief from Defendants METROPCS WIRELESS, INC.'s and METROPCS NEW YORK, LLC's unlawful and willful conduct as the Court deems just and proper.

106.   Plaintiff Palma, on behalf of herself and the New York Class, seeks recovery of attorneys' fees and costs to be paid by Defendants METROPCS WIRELESS, INC. and METROPCS NEW YORK, LLC as provided by the New York Labor Law.

## COUNT II
## VIOLATION OF THE CALIFORNIA LAWS – CALIFORNIA CLASS

107.   Plaintiffs reallege and reaver paragraphs 1 through 93 of the Complaint as if fully set forth herein.

108.   At all relevant times, members of the California Class were employed by Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC, in the state of California, within the meaning of California law. At all relevant times, members of the California Class worked in excess of eight hours in a day and/or 40 hours in a week.

109.   At all relevant times, Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC violated the rights of the members of the California Class by failing to pay them proper compensation for all hours worked each workweek, as well as for overtime compensation at the appropriate premium rate for each hour worked in excess of eight in a day and/or 40 in a week, in violation of California Labor Code section 510 and the applicable I. W. C. Wage Order.

110.    At all relevant times, Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC also violated the rights of the members of the California Class by failing to provide meal breaks and or rest breaks in violation of California Labor Code section 512 and the applicable I. W. C. Wage Order. At all relevant times, Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC had a policy and/or practice of not providing rest breaks or meal breaks to members of the California Class.

111.    At all relevant times, Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC also violated the rights of the members of the California Class by failing to reimburse them for business expenses incurred in direct consequence of the discharge of their duties, including but not limited to: mileage, cell phone charges, copying charges, fax charges, printing charges and postage.

112.    At all relevant times, Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC also violated the rights of the members of the California Class by failing to provide them with proper itemized wage statements as required by California Labor Code section 226.

113.    At all relevant times, Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC also violated the rights of the members of the California Class by failing to pay all accrued and unused vacation wages at the time of separation employment to members of the California Class who separated from employment, as required by California Labor Code section 227.3.

114.    At all relevant times, Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC also violated the rights of the members of the California Class by failing to pay all wages at the time of the separation of employment of members of the California Class who separated from employment, as required by California Labor Code section

203. In particular, because Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC failed to pay overtime premium wages, those premium wages remained unpaid at the time of separation of employment.

115.    The unlawful conduct of Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC against the California Class alleged herein constitutes unfair competition within the meaning of California Business and Professions Code section 17200, *et seq.* due to its unfair and unlawful business practices, Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC have gained a competitive advantage over other comparable companies doing business in California to comply with their obligations to properly pay overtime wages, to provide required rest breaks and meal breaks, to pay vested vacation wages upon separation, to provide accurate wage and hour statements, to timely pay all wages due upon separation of employment and to reimburse business expenses incurred by employees as a direct consequence of carrying out their duties. As a result of Defendants METROPCS WIRELESS, INC.'s and METROPCS CALIFORNIA, LLC's unfair competition as alleged herein, the California Class has suffered injury in fact and lost money or property, as described above. Pursuant to California Business and Professions Code section 17203, the California Class is entitled to restitution of all wages and other monies rightfully belonging to them that Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC failed to pay them and wrongfully retained by means of its unlawful and unfair business practices.

116.    The conduct alleged herein above by Defendants METROPCS WIRELESS, INC. and METROPCS CALIFORNIA, LLC against the California Class constitutes violations of numerous provisions of the California Labor Code. As such, the members of the California Class seek penalties under the California Private Attorneys General Act, California Labor Code section 2699, *et seq.* these posts are sought for all violations committed by Defendants METROPCS

Page 23 of 25

WIRELESS, INC. and METROPCS CALIFORNIA, LLC, including, but not limited to, California labor code sections 201, 202, 203, 226, 226.7, 227.3, 510, 1194 and 2802.

## PRAYER FOR RELIEF[1]

WHEREFORE, Plaintiffs on behalf of themselves and all other similarly situated members of the New York and California Classes, respectfully request that this Court grant the following relief:

a.   Certification of this action as a class action pursuant to Article 9 of the CPLR on behalf of the members of the New York Class and appointing Palma and her counsel to represent the Class;

b.   Certification of this action as a class action pursuant to Article 9 of the CPLR on behalf of the members of the California Class and appointing Plaintiff Pacheco and her counsel to represent the Class;

c.   A declaratory judgment that the practices complained of herein are unlawful under the New York Labor Law and California law;

d.   An injunction against MetroPCS and its aforementioned subsidiaries, officers, agents, successors, employees, representatives and any and all persons in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.   An award of unpaid wages and overtime compensation;

f.   As to the California Class: an award of unpaid overtime wages, an award of meal and rest period premiums, an award of improper itemized wage statement penalties, an award of unpaid accrued but unused vacation wages for members of the California

---

[1] Plaintiffs identify a similar action that is pending currently in the United States District Court for the Middle District of Florida, Tampa Division (*Palma et al., v. METROPCS Wireless, Inc., et al.*, Case No. 8:13-cv-00698) ("FLSA Action").  Plaintiffs, on behalf of themselves and the putative classes (including the putative New York Class and California Class), agree that any monies received in the FLSA Action are an offset to any potential award of damages in the instant Class Action Complaint.

Class who have separated from employment, an award of penalties for failure to timely pay all wages due at the time of separation of employment for members of the California Class who have separated from employment, an award of business expense reimbursement and all penalties provided for under the California Private Attorney Generals Act for all violations of the California Labor Code committed against the California Class.

g.     As to the New York Class: an award of unpaid overtime wages, an award of liquidated and/or punitive damages as a result of the MetroPCS' willful failure to pay wages and overtime compensation, unpaid wages for all hours worked at the agreed upon rate of pay, unpaid wages for call-in pay, unpaid wages for spread of hours.

h.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

i.     Such other and further relief as this Court deems just and proper.

Dated: August __, 2014

Respectfully submitted,

_____
ANDREW FRISCH, ESQ.
MORGAN & MORGAN, P.A.
600 N. Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) 318-0268
Facsimile:  (954) 333-3515
E-mail: AFrisch@forthepeople.com

Trial Counsel for Plaintiffs

4850-5242-5244, v. 1